397 P.3d 1063

**IN RE the MARRIAGE OF Lisa J. FRIEDMAN, Petitioner/Appellant,**

**and**

**David C. ROELS Jr., Respondent,**

**Claudia Roels and David C. Roels Sr., Intervenors/Appellees.**

No. 2 CA-CV 2016-0029

Court of Appeals of Arizona,
Division 2.

Filed June 19, 2017

---

Dawn Wyland, Tucson, Counsel for Petitioner/Appellant

Susan M. Schauf, PLLC, Tucson, By Susan M. Schauf, Counsel for Intervenors/Appellees

Judge Espinosa authored the opinion of the Court, in which Judge Miller concurred and Presiding Judge Staring dissented.

## OPINION

ESPINOSA, Judge:

¶ 1 Lisa Friedman appeals the trial court's decision to grant visitation rights to the paternal grandparents of her two children. She contends the court failed to accord sufficient weight to the presumption that her decision to deny visitation was in the children's best interests, effectively shifting the burden of proof to require her to prove visitation was not in their best interests. For the reasons that follow, we affirm.

## Factual and Procedural Background

¶ 2 We view the record in the light most favorable to upholding the trial court's decision. *Johnson v. Johnson*, 131 Ariz. 38, 44, 638 P.2d 705, 711 (1981). Lisa Friedman and David Roels Jr. married in 2001 and have two minor children: M., born in 2003, and R., born in 2005. The couple separated informally in March 2010, following an incident in which Roels "went into a rage" and was admitted to a psychiatric facility with suicidal ideation. Friedman petitioned for legal separation in September 2010, and for dissolution of the marriage in May 2011. She and Roels signed a consent decree of dissolution in July 2011.

¶ 3 Roels has had supervised parenting time since the separation. He had no legal decision making authority over the children until August 2015, when he and Friedman agreed that while Friedman would retain "final decision making authority," she would consult with Roels on non-emergency matters. The children received counseling beginning in June 2010 and participated in several family therapy sessions with Roels in 2012, 2013, and 2015. He had been abusive at times during the marriage, including yelling and losing his temper, and "kicking [M.] once" and "holding him and grabbing him once."

¶ 4 In April 2014, paternal grandparents David Roels Sr. and Claudia Roels (Grandparents) filed a petition pursuant to A.R.S. § 25–409 to obtain court-ordered visitation. The trial court entered a temporary order allowing them to participate in Roels's supervised parenting time for a minimum of one hour per month. At that time, they had not spoken to the children in nearly four years, at Friedman's insistence.

¶ 5 The trial court conducted a two-day hearing in August 2015. Grandparents testified that before the parents' separation, they had enjoyed a close relationship with the children. They had attended M.'s birth and met R. a week after hers and frequently travelled to Tucson to attend school and sports activities and spend time with the family. On two occasions, they had provided child care during the day for multiple-day periods and were a regular presence in the children's lives. After the separation, Friedman cut off Grandparents' access to the children and insisted there be no contact between them. Grandparents, however, attempted to maintain contact by sending the children cards and gifts for their birthdays and holidays.[1]

¶ 6 The children were initially averse to reuniting with their grandparents: Roels testified that when he first had spoken to them about the visits, M. had stated he "d[id]n't want [Grandparents] to come." After the first visit, however, "there just wasn't any apprehension or ... tension." Delana Cota, a family support specialist who supervised the first visit, described the children's initial reaction to their grandparents as "quiet" and "awkward," but recognized that "the mood of the visit elevated ... [and] [b]ecame more comfortable." When Grandparents left, Cota overheard M. and R. discussing the visit and heard R. ask M., "Do you agree with me, it was good with grandparents," to which M. said, "Pretty nervous about nothing." R. then responded, "You would be fine if they came again, are you with me ... I like them coming."

¶ 7 Bethany Aaronson, another independent visit supervisor, testified that Grandparents planned extensively for their court-ordered visits and the children appeared to enjoy them. She characterized the visits as "very successful" and noted that when Grandparents were around, the activities were more structured and there was "more laughing, more kidding around" and everyone was "a little more involved and engaged." In contrast, Aaronson described visits with only Roels as "unstructured" with "[t]he children often spen[ding] a lot of time looking at their devices." But when Grandparents were present, "the children engaged with the activities, and as a result ... then began engaging with the adults." On one occasion, "the children spontaneously got up and hugged [Grandparents] a second time before they left."

---

1. Grandfather testified he did not know whether the cards and gifts actually had reached the children, but said "most of the time" previously they would receive thank-you cards, written by Friedman or, later, drawn by the children, but that stopped in 2010 with the separation.

¶ 8 Friedman and two therapists testified the children had anxiety and PTSD [2] symptoms both during and outside the supervised visits. Beth Winters, the children's former therapist who had never met or evaluated Grandparents, opined that the children "could have been" exhibiting behavior "indicat[iv]e ... [of] trauma" due to Grandparents' visitation, but acknowledged that the children's awareness of their mother's feelings toward their grandparents could have influenced them. She also agreed that it is "important for children to have grandparents in their lives." Karen Morse, the children's other therapist, similarly testified they had been "trauma[tized]" in the past, but were improving as of October 2014. Morse, who also had never met or evaluated Grandparents, concluded that news of court-ordered grandparent visits had caused the children to become more anxious, and opined that they experienced trauma during Grandparents' visits.

¶ 9 The trial court found the expert opinions to be of limited usefulness, and in a detailed under-advisement ruling, after considering all relevant evidence, "including the demeanor and credibility of the parties," determined it was in the children's best interests to have visitation with their grandparents. The court entered an order entitling Grandparents to video calls with the children every two weeks and allowing them to participate in portions of Roels's supervised parenting time.[3] Friedman filed a timely motion for new trial, which the court denied, and this appeal of the denial of the motion for new trial followed. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(5).

### Grandparents' Visitation Request

■ ¶ 10 Friedman contends the trial court erred in awarding Grandparents visitation despite Friedman, as the children's "only fit parent," having determined the visits were contrary to the children's best interests. We review the decision to award grandparent visitation for an abuse of discretion. *Mc-*

2. Posttraumatic stress disorder.

3. The bulk of Roels's parenting time and Grandparents' visits were to occur by video because of

*Govern v. McGovern*, 201 Ariz. 172, ¶ 6, 33 P.3d 506, 509 (App. 2001).

¶ 11 Section 25–409(C), A.R.S., provides "a person other than a legal parent may petition the superior court for visitation with a child" and the court "may grant visitation rights during the child's minority on a finding that the visitation is in the child's best interests and ... [f]or grandparent or great-grandparent visitation, the marriage of the parents has been dissolved for at least three months." Subsection (E) further states:

> In deciding whether to grant visitation to a third party, the court shall give special weight to the legal parents' opinion of what serves their child's best interests and consider all relevant factors including:
>
> 1. The historical relationship, if any, between the child and the person seeking visitation.
>
> 2. The motivation of the requesting party seeking visitation.
>
> 3. The motivation of the person objecting to visitation.
>
> 4. The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.

§ 25–409(E). Subsection (F) adds, "If logistically possible and appropriate, the court shall order visitation by a grandparent or great-grandparent if the child is residing or spending time with the parent through whom the grandparent or great-grandparent claims a right of access to the child." § 25–409(F). Finally, subsection (G) directs grandparents and great-grandparents to petition for visitation in the same case in which the court determined the parents' legal decision-making authority and parenting time. § 25–409(G).

■ ¶ 12 As § 25–409(E) states, a trial court considering a request for non-parent visitation must give "special weight to the legal parents' opinion of what serves their child's best interests." This aligns with the Supreme Court's holding in *Troxel v. Gran-*

Friedman's pending relocation with the children to California, which Roels stipulated to the day before the hearing began.

*ville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). As Friedman points out, the Court in that case held that parents have a fundamental liberty interest under the Fourteenth Amendment to the "care, custody, and control of their children," with a "presumption that fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 65, 68, 120 S.Ct. 2054; *see also McGovern*, 201 Ariz. 172, ¶ 17, 33 P.3d at 511. "However, grandparent visitation granted within the parameters of § 25–409 'does not substantially infringe on parents' fundamental rights.'" *Lambertus v. Porter*, 235 Ariz. 382, ¶ 29, 332 P.3d 608, 614 (App. 2014) (Brown, J., dissenting), *quoting McGovern*, 201 Ariz. 172, ¶ 9, 33 P.3d at 509.

■ ¶ 13 In *McGovern*, this court set forth "constitutionally based principles that a trial court should … follow in determining … grandparent visitation rights under § 25–409." 201 Ariz. 172, ¶ 17, 33 P.3d at 511. First, the court should apply a rebuttable presumption that "a fit parent acts in his or her child's best interest in decisions … concerning grandparent visitation." *Id.* And second, the court must give "'some special weight' to a fit parent's determination of whether visitation is in the child's best interests." *Id.* ¶ 18, *quoting Troxel*, 530 U.S. at 70, 120 S.Ct. 2054. The *McGovern* court concluded that "[t]he amount of weight a trial court should place on these factors" is an issue left "for development on a case-by-case basis." *Id.*, *quoting Harrington v. Daum*, 172 Or. App. 188, 18 P.3d 456, 460 (2001). We stressed that these principles "affect but do not necessarily control a trial court's determinations of 'best interests of the child' and 'reasonable [grandparent] visitation rights' under [§ 25–409]." *Id.* ¶ 19.

¶ 14 Here, the trial court followed *McGovern* and applied the presumption that Friedman was acting in the children's best interests in denying visitation, but ultimately expressly determined Grandparents had rebutted that presumption. In reaching its conclusion, the court made extensive findings regarding the children's best interests while acknowledging it was required to "give 'some special weight' to a fit parent's determination of whether visitation is in the child's best

interest" and "consider all relevant factors, including those … enumerated in A.R.S. § 25–409." *See* § 25–409(E). In doing so, the court explicitly "g[ave] deference to [Friedman]'s position" and "applied the presumption that [Friedman] has and shall continue to make decisions that are in the children's best interests."

¶ 15 Specifically, the trial court found Grandparents had a "significant relationship [that] was very positive with the children" until the parents separated, *see* § 25–409(E)(1), and since the relationship resumed in 2015, it had been "progressing well." The court noted "[G]randparents ha[d] planned for weeks for each visit and ha[d] provided activities and structure to keep the children involved," which the children responded well to, offering "spontaneous hugs" at the end of some visits. It additionally considered the testimony of Bethany Aaronson that Roels experienced quality parenting time when Grandparents were present; Aaronson observed "a lot of laughter and joking," but noted "the children's affect changed upon seeing Mother following the visits" immediately from a happy demeanor to a subdued one.

■ ¶ 16 As for the therapists' opinions, the trial court found that Morse had only reviewed "very limited, selected supervised visitation reports provided by [Friedman]"; had never observed the children with Grandparents or Roels; her primary input had been from Friedman; and it was unclear how she had ascertained Friedman was not alienating the children from Grandparents. The court further noted that Winters had not had much time with the children in recent years. It is well established that "[t]he weight and credibility to be given expert testimony are matters to be decided by the factfinder." *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 45, 945 P.2d 317, 356 (App. 1996), *quoting State v. Moyer*, 151 Ariz. 253, 255, 727 P.2d 31, 33 (App. 1986); *see also State v. Pesqueira*, 235 Ariz. 470, ¶ 14, 333 P.3d 797, 802 (App. 2014) ("the weight and credibility of [expert] testimony … are questions of fact"), *quoting Pipher v. Loo*, 221 Ariz. 399, ¶ 17, 212 P.3d 91, 96 (App. 2009).

¶ 17 The trial court also found Grandparents were "motivated by love" of the children and a desire to influence them in a positive way, among other factors, and expressed its concern that Friedman was motivated in part by a continued desire to exclude Grandparents because of her relationship with them. *See* § 25–409(E)(2)–(3). The court was also concerned that some of the children's reported behaviors and reactions to Roels and Grandparents were "due to [Friedman's] own reactions" to them. The court further found that the visitation requested by Grandparents would not have "an adverse impact on the children's customary activities." *See* § 25–409(E)(4). Finally, the court noted that Roels "wants his parents to continue to have a relationship with the children."

▋ ¶ 18 On the latter point, it is significant that there are two parents here who agreed to share decision-making, and they have conflicting views about whether it is in their children's best interests to have visitation with their grandparents. Roels articulated his position at trial, stating he felt it was important for the children to have a relationship with his parents because "they need to know also where they come from" and should "connect[ ] to more than just [their] mom and dad." Friedman, on the other hand, opposed the few hours of grandparent visits, claiming it caused "[the] kids" to "[go] down hill," and alleging increased anxiety, panic attacks, and problems at school. Although Roels's rights in relation to the children bear some significant restrictions and the parties agreed that Friedman has "final decision making authority" in the event of a disagreement, as Grandparents point out, Roels was not found to be an unfit parent and therefore his "determination" is also entitled to "special weight." *See Troxel*, 530 U.S. at 68–70, 120 S.Ct. 2054.[4]

¶ 19 We conclude the trial court applied the proper standards in awarding visitation to Grandparents. The court correctly employed the fit-parent presumption and the factors set forth in § 25–409(E), it expressly accorded "special weight" to Friedman's position, and there is sufficient evidence to support its conclusion that Grandparents had overcome the presumption.

¶ 20 Friedman and our dissenting colleague rely on *Goodman v. Forsen*, 239 Ariz. 110, 366 P.3d 587 (App. 2016), issued after the trial court ruled in this case. There, Division One of this court addressed a situation in which the mother opposed her former cohabiting girlfriend's request for visitation with the child. The court reversed the trial court's visitation order in favor of the former girlfriend, holding that the "special weight" accorded a parent's visitation decision means the party seeking visitation must prove the denial of visitation "would substantially impair the child's best interest." Friedman argues that *Goodman* should be applied retroactively to this case and that Grandparents failed to meet its standard. Grandparents respond that *Goodman* set new, heightened requirements not contained in either § 25–409 or *McGovern*, and should not be applied here. We conclude, however, we need not resolve those issues because we find *Goodman* significantly distinguishable.

¶ 21 In *Goodman*, only one parent was involved, as the father's rights had been severed. 239 Ariz. 110, ¶ 3, 366 P.3d at 588. The father in this case, however, has always been, and continues to be, involved in the children's lives. As noted above, absent a finding that he was an unfit parent, the trial court, pursuant to § 25–409(E), properly considered Roels's position that maintaining a relationship with their grandparents was in the children's best interest. Furthermore, the person seeking visitation in *Goodman* was a former cohabiting partner with no other ties to the child. 239 Ariz. 110, ¶¶ 4–6, 366 P.3d at 588. In contrast, the grandparents here have bio-

**4.** The dissent suggests Roels should not be considered a fit parent due to the agreement limiting his rights, and notes that Grandparents did not argue otherwise below. But the trial court had a statutory duty to consider the positions of *both* parents in relation to the best interests of the children, notwithstanding any agreements between the parties. A.R.S. § 25–409(E) (court "shall give special weight to the *legal parents'* opinion") (emphasis added). Furthermore, even if this could properly be characterized a "waived" argument, it is well established we are not limited to the theories of the parties in upholding the trial court's correct decision. *See State v. Huez*, 240 Ariz. 406, ¶ 19, 380 P.3d 103, 109 (App. 2016) (appellate court required to affirm trial court's ruling if legally correct for any reason).

logical and familial ties that will be present now and in the future. *See, e.g., Graville v. Dodge*, 195 Ariz. 119, ¶ 26, 985 P.2d 604, 610 (App. 1999) (noting state's interest in promoting "continuation of caring relationships between family members, particularly among grandchildren and their grandparents"); *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512, 525 (2006) (all states have a system for awarding grandparent visitation because they recognize "the importance of the grandparent-grandchild relationship in the lives of children"), *quoting Moriarty v. Bradt*, 177 N.J. 84, 827 A.2d 203, 210 (2003).[5] Finally, the *Goodman* court noted the mother's concerns about the former girlfriend fighting with her current girlfriend in the child's presence, and that she had spanked the child and "struck her face." 239 Ariz. 110, ¶¶ 4–6, 366 P.3d at 588–89. Thus, to the extent *Goodman* may establish a more stringent standard for court-ordered visitation than § 25–409 and *McGovern*, we decline to extend its holding to the very different situation presented here.

¶ 22 The trial court made detailed findings clearly supported by the evidence,[6] *see In re Estate of Newman*, 219 Ariz. 260, ¶ 13, 196 P.3d 863, 868 (App. 2008), and viewing that evidence in the light most favorable to upholding the court's ruling, *see Johnson*, 131 Ariz. at 44, 638 P.2d at 711, we conclude Grandparents demonstrated that Friedman's decision to bar them from visitation was not in the children's best interests, *see McGovern*, 201 Ariz. 172, ¶¶ 17–18, 33 P.3d at 511. Accordingly, we cannot say the court's limited visitation award was an abuse of its discretion. Although our dissenting colleague

concludes "[t]he constitutional protection afforded to parents represents a high bar[,]" it should not be so high that few, if any, grandparents could ever clear its hurdle were there a requirement of establishing harm to the children from denial of visitation in every case.

## Trial Court's Denial of Attorney Fees

¶ 23 Friedman also appeals the trial court's denial of her request for attorney fees pursuant to A.R.S. § 25–324(A), which allows a discretionary fee award in domestic relations proceedings, including requests for nonparent visitation pursuant to § 25–409. The court has discretion to grant such an award "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." § 25–324(A). We review the court's denial of fees for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, ¶ 6, 333 P.3d 818, 821 (App. 2014).

¶ 24 In assessing the fee request, the trial court imputed an $80,000 annual income to Friedman based on her earnings the previous year, and compared Grandparents' $122,000 annual income. It also considered that Friedman is "expected to be sharing expenses with her boyfriend in California" and that their combined income "will probably be greater than [G]randparents[']," despite having heard no testimony about the boyfriend's income. Though it appears the court may have made an unsupported assumption about Friedman's prospective income, in light of the reasonableness of each party's positions and § 25–324(A)'s discretionary nature, we see no

---

5. The dissent argues "we should conclude the legislature did not intend any distinction [between grandparents and other third-parties] be drawn." But this assertion discounts, if not ignores, the numerous distinctions drawn in the statute itself. For example, A.R.S. § 25–409(F) mandates that the trial court "shall," if logistically possible and appropriate, "order visitation by a grandparent or great-grandparent if the child is residing or spending time with the parent through whom the grandparent or great-grandparent claims a right of access," a benefit not afforded to other third-parties seeking visitation. Moreover, the trial court not only could but was required to consider the nature of the relationship between Grandparents and the children. § 25–409(E)(1)–(2), (4).

6. Our dissenting colleague would find the evidence insufficient to support the trial court's ruling, but he focuses on the factors involving Grandparents' motivation, while ignoring or discounting other evidence the court expressly and implicitly considered, including Grandparents' positive effects on the children's visits with Roels, the potential loss to the children of the love and support of their extended family, indications that Friedman's efforts to alienate the children from Grandparents were exacerbating the children's anxiety, and the negative effects of her "setting the kids up" to be unhappy about Grandparents.

reason to disturb the court's decision to decline the fee request.

## Attorney Fees on Appeal

¶ 25 Both parties request an award of fees and costs on appeal pursuant to § 25–324. After considering the financial resources and the reasonableness of the positions of the parties, we find each side should bear its own fees and costs on appeal. *See Leathers v. Leathers*, 216 Ariz. 374, ¶ 22, 166 P.3d 929, 934 (App. 2007).

## Disposition

¶ 26 For all of the reasons discussed above, the trial court's order granting visitation with Grandparents is affirmed.

STARING, Presiding Judge, dissenting:

¶ 27 The fact that in many instances children benefit from relationships with their grandparents is not at issue. The issue is whether circumstances exist that permit the state to interfere with parental decision-making and compel those relationships. Because the majority impermissibly diminishes the constitutional presumption favoring the decisions of fit parents, I dissent.

¶ 28 The majority correctly observes that parents enjoy a fundamental liberty interest under the Fourteenth Amendment to the "care, custody, and control of their children," with a "presumption that fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 65, 68, 120 S.Ct. 2054; *see also McGovern*, 201 Ariz. 172, ¶ 17, 33 P.3d at 511. The majority also recognizes a court must give "some special weight to the parent's own determination" of the child's best interests. *Troxel*, 530 U.S. at 68–70, 120 S.Ct. 2054; *see also McGovern*, 201 Ariz. 172, ¶ 18, 33 P.3d at 511. However, it stops short of acknowledging that, even pre-*Goodman*, a court could not grant non-parent visitation " 'based solely on the judge's determination

of the child's best interests' or on the judge's 'mere disagreement' with a fit parent's choice." *McGovern*, 201 Ariz. 172, ¶ 19, 33 P.3d at 512, *quoting Troxel*, 530 U.S. at 67–68, 120 S.Ct. 2054; *see also Egan v. Fridlund–Horne*, 221 Ariz. 229, ¶ 43, 211 P.3d 1213, 1225 (App. 2009) (trial court may not "simply second-guess" fit parent's decision regarding visitation rights).

¶ 29 Further, in discussing the constitutional presumption, the majority quotes language from *McGovern*: "[G]randparent visitation granted within the parameters of § 25–409 'does not substantially infringe on parents' fundamental rights.' " *Lambertus*, 235 Ariz. 382, ¶ 29, 332 P.3d at 614 (Brown, J., dissenting), *quoting McGovern*, 201 Ariz. 172, ¶ 9, 33 P.3d at 509. However, this language does not, as the majority seems to suggest, state a rule that the constitutional protection afforded to parents' decisions is diminished in cases where grandparent visitation is at issue. It merely recognizes that grandparent visitation granted in compliance with the statute, which in turn requires adherence to the presumption, does not violate a parent's fundamental rights.

¶ 30 Although § 25–409(E) codifies the presumption, requiring a "court [to] give special weight to the legal parents' opinion of what serves their child's best interests," it does not distinguish between grandparents and other third parties in the determination of whether visitation may be granted. Thus, in keeping with longstanding principles of statutory interpretation, we should conclude the legislature did not intend any distinction be drawn in determining whether visitation is otherwise appropriate.[7] *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) ("If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation."); *In re Casey G.*, 223 Ariz. 519, ¶ 2, 224 P.3d 1016, 1017 (App. 2010) (court interpreting statute shall "ascertain and give effect

---

**7.** The majority cites § 25–409(F) and (G), which specifically refer to grandparent visitation. But it does not cite authority indicating either subsection diminishes the constitutional presumption favoring the decisions of fit parents or elevates the status of grandparents under § 25–409(E). If anything, the specific inclusion of grandparent

visitation in (F) and (G), but not (E), shows the legislature did not intend to draw a distinction for grandparents in (E). *Egan*, 221 Ariz. 229, ¶ 37, 211 P.3d at 1223 ("[W]e presume that when the legislature uses different wording within a statutory scheme, it intends to give a different meaning and consequence to that language.").

to" legislature's intent, with "language of the statute" as "best indicator" of intent).[8] As we recognized in *Egan*, "[c]onsistent with the constitutional right to parent, the legislature has provided nonparents with fewer rights than parents." 221 Ariz. 229, ¶ 31, 211 P.3d at 1222. Nothing in the statute, therefore, suggests a parent's decisions are any less protected merely because a grandparent is the party seeking visitation.

¶ 31 Moreover, in *Goodman*, which was decided after Friedman initiated her appeal, we concluded the "special weight" requirement of § 25–409(E) requires "robust deference," and means "that the parents' determination is controlling unless a parental decision clearly and substantially impairs a child's best interests." 239 Ariz. 110, ¶ 13, 366 P.3d at 590. "Even if arbitrary, the parents' determination is the primary factor in the analysis," and a non-parent seeking visitation must prove the "decision is harmful." *Id.* ¶¶ 13–14. In *Goodman*, we also admonished that "[t]he court's role is not to engineer what it perceives to be the optimal situation for the child, but to determine whether compelling circumstances warrant state interference with a fit parent's decisions." *Id.* ¶ 14; *see also Troxel*, 530 U.S. at 72–73, 120 S.Ct. 2054 (rejecting "presumption in favor of grandparent visitation," cautioning that states may not infringe on fundamental right to parent "simply because a state judge believes a 'better' decision could be made").[9] *Goodman* reflects appropriate respect for the fundamental nature of parental rights.

¶ 32 Furthermore, *Goodman* should apply retroactively.[10] "Unless otherwise specified," civil appellate opinions "operate both retroactively and prospectively." *Law v. Superior Court*, 157 Ariz. 147, 755 P.2d 1135, *supp. op.*, 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988); *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 435–36, 641 P.2d 1275, 1279–80 (1982). A decision may be limited to prospective application only if it "establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed," and retroactive application would both frustrate "the purpose behind the new rule" and "produce substantially inequitable results." *Law, supp. op.*, 157 Ariz. at 160, 755 P.2d at 1148.

¶ 33 *Goodman* was the first Arizona case to refer to "robust deference" and to require proof that denying visitation would "clearly and substantially impair the child's interests." 239 Ariz. 110, ¶ 13, 366 P.3d at 590. But it is consistent with *McGovern*, which required a non-parent seeking visitation to rebut the presumption a fit parent's decision served the child's best interests, and also required courts to "give 'some special weight' to" parents' decisions. 201 Ariz. 172, ¶¶ 17–19, 33 P.3d at 511–12, *quoting Troxel*, 530 U.S. at 70, 120 S.Ct. 2054. Thus, *Goodman* serves to clarify pre-existing law. *See Goodman*, 239 Ariz. 110, ¶¶ 11–14, 366 P.3d at 590–91. It does not generate any "new legal principle" sufficient to rebut the presumption of retroactive application.[11] *Law, supp. op.*, 157 Ariz. at 160, 755 P.2d at 1148.

---

8. The legislature amended § 25–409 in 2012, at which time the "special weight" requirement in subsection (E) was added. *See* 2012 Ariz. Sess. Laws, ch. 309, §§ 19–20; 2003 Ariz. Sess. Laws, ch. 89, § 1. In 2001, when we decided *McGovern*, § 25–409(A) expressly provided for granting "reasonable visitation rights" to grandparents upon a finding that visitation would be in the child's best interests. 201 Ariz. 172, ¶ 8, 33 P.3d at 509.

9. Here, the trial court appears to have focused upon achieving what it perceived to be the optimal result. For example, the court stated: "And I've represented kids. I've worked with kids a lot. I worry about kids that are on my caseload. And yet I'm ever the optimist that—that things can move forward with families." It also stated: "I'm very familiar with reunification efforts. I'm very familiar with the processes with the varying amount of success that reunification can have."

10. Because the constitutional presumption is not limited to the type of third-party visitation at issue in *Goodman*, as highlighted by the absence of any such distinction in § 25–409(E), nor applicable only to cases involving strong evidence of physical abuse, I disagree with the majority's conclusion that *Goodman* is distinguishable.

11. Neither are the other requirements for overcoming the presumption of retroactivity present. *Goodman* neither decided "an issue whose resolution was not foreshadowed," nor would its retroactive application adversely affect the purpose of the clarification provided or produce "substantially inequitable results." *Law, supp. op.*, 157 Ariz. at 160, 755 P.2d at 1148.

¶ 34 In this instance, Grandparents presented insufficient evidence to rebut the presumption even before *Goodman.* Importantly, the trial court's decision does not indicate precisely how Grandparents had rebutted the presumption. Its finding that Grandparents "are motivated by their love of their grandchildren, their age, the fact that these are their only grandchildren, and by a desire to influence the children in a positive way," relates to Grandparents' motivation, which is not synonymous with the children's best interests. *See Galbraith v. Galbraith,* 88 Ariz. 358, 363, 356 P.2d 1023, 1027 (1960); *Hoffman v. Hoffman,* 4 Ariz.App. 83, 85, 417 P.2d 717, 719 (1966). A person could sincerely possess such motivations and visitation could still be harmful. Likewise, the children's apparent subjective enjoyment of portions of visits with Grandparents also is not synonymous with best interests, especially in light of the children's lack of maturity.[12] *Cf.* A.R.S. § 25-403(A)(4) (wishes of child with "suitable age and maturity" relevant to determination of parenting time); *Parham v. J.R.,* 442 U.S. 584, 603-04, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (parental authority to make decisions not diminished by child's disagreement); *Aksamit v. Krahn,* 224 Ariz. 68, ¶¶ 14-15, 227 P.3d 475, 478-79 (App. 2010) (attorney representing "child's best interests" not bound by child's wishes); *J.A.R. v. Superior Court,* 179 Ariz. 267, 274, 877 P.2d 1323, 1330 (App. 1994) ("The wishes of the child of a sufficient age to form an intelligent custody preference are persuasive, although not controlling.").

¶ 35 In addition, the trial court's "concern[s]" that the children's trauma reactions were influenced by Friedman's "reactions to ... grandparents" based on an alleged motivation "to exclude ... grandparents in part because of her relationship with them" are not supported by the record. The record describes no instances in which Friedman had an opportunity to "react" to Grandparents in the presence of the children, and the ruling itself refers only to an alleged failure to reciprocate the greetings of a visit supervisor. *See Grant v. Ariz. Pub. Serv. Co.,* 133

Ariz. 434, 456, 652 P.2d 507, 529 (1982) (abuse of discretion if record does not contain substantial evidence supporting finding). In any case, an alleged motivation to alienate a child from a non-parent, even when supported by the record, "does not warrant judicial interference with [a fit parent]'s child-rearing decisions." *Goodman,* 239 Ariz. 110, ¶ 17, 366 P.3d at 591. Also, the potential for alienation is even less relevant with respect to Grandparents, who have never been "treated as a parent" by the children, and thus have neither in loco parentis rights as defined by A.R.S. § 25-401(1) nor a history with the children significant enough to raise concerns that the children might be harmed by "disruption of contact." *McGovern,* 201 Ariz. 172, ¶¶ 3, 27, 33 P.3d at 508, 513-14; *see also Goodman,* 239 Ariz. 110, ¶¶ 7, 18, 366 P.3d at 589, 591-92.

¶ 36 Further, because Grandparents did not raise it in the trial court, we should not consider the contention Friedman is not the only fit parent. *See Payne v. Payne,* 12 Ariz. App. 434, 435, 471 P.2d 319, 320 (1970) (failure to raise argument below generally waives it on appeal). And, we should reject any argument the August 2015 agreement gives Roels equal legal decision-making authority. The agreement expressly states that, should the parents disagree, "[Friedman] shall have final decision making authority" on non-emergency matters. Nothing about the parents' agreement would permit the trial court to order or continue visitation over Friedman's objection absent proof "that denial of visitation would clearly and substantially impair the child[ren]'s interests." *Goodman,* 239 Ariz. 110, ¶ 13, 366 P.3d at 591; *see also* A.R.S. § 25-410(A) (court may limit authority of sole legal decision-maker only if "the child's physical health would be endangered or the child's emotional development would be significantly impaired").

¶ 37 The constitutional protection afforded to parents represents a high bar. In this

---

12. The court appeared to conclude, based on adverse credibility determinations against Friedman and the therapists, that the children's outward appearance of enjoying significant portions of Grandparents' visits was indicative of actual enjoyment rather than possible suppression of the fight or flight instinct, as Morse had suggested.

case, the record is insufficient to overcome the heavy presumption accorded to Friedman's decisions as a fit parent. As was the case with *Troxel*, "it is apparent that the entry of the visitation order in this case violated the Constitution." [13] 530 U.S. at 75, 120 S.Ct. 2054.

---

**13.** In light of the majority's decision to affirm the trial court, I do not address issues of attorney fees in this dissent.