IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**IN RE THE MARRIAGE OF**

**LISA J. FRIEDMAN**,
*Petitioner/Appellant*,

*and*

**DAVID C. ROELS, JR.**,
*Respondent*,

**CLAUDIA ROELS AND DAVID C. ROELS, SR.**,
*Intervenors/Appellees*.

---

No. CV-17-0225-PR
Filed June 8, 2018

---

Appeal from the Superior Court in Pima County
The Honorable Alyce L. Pennington, Judge Pro Tempore
No. D20103718
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
242 Ariz. 463 (App. 2017)
**VACATED**

---

COUNSEL:

Dawn Wyland (argued), Wyland Law, P.C., Tucson, Attorney for Lisa J. Friedman

Susan M. Schauf (argued), Susan M. Schauf, PLLC, Tucson, Attorney for Claudia Roels and David C. Roels, Sr.

---

JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICES TIMMER, BOLICK, GOULD, and LOPEZ joined.

———————

JUSTICE PELANDER, opinion of the Court:

¶1 Under Arizona's third-party-visitation statute, the superior court may grant visitation rights to a person other than a child's legal parent upon a finding that "visitation is in the child's best interests." A.R.S. § 25-409(C). In making that discretionary determination, the court "shall give special weight to the legal parents' opinion of what serves their child's best interests." § 25-409(E). We hold that when two legal parents disagree about whether visitation is in their child's best interests, both parents' opinions are entitled to special weight under § 25-409(E). We further hold that under those circumstances, neither parent is entitled to a presumption in his or her favor and the parents' conflicting opinions must give way to the court's finding on whether visitation is in the child's best interests.

**I.**

¶2 We view the record in the light most favorable to supporting the family court's visitation order. *See Johnson v. Johnson*, 131 Ariz. 38, 44 (1981). Lisa Friedman ("Mother") and David Roels, Jr. ("Father") married in 2001, had two children together (M., born in 2003, and R., born in 2005), informally separated in 2010, and divorced in 2011. Under the dissolution decree, Mother obtained sole custody of, and legal decision-making for, the children, but Father was entitled to supervised parenting time for two four-hour periods every week. The supervision requirement was partly based on Father's hospitalization for psychiatric issues and his abusive behavior toward the children, which included kicking M. at least once. After Mother and Father separated, the children began seeing various therapists for post-traumatic stress disorder and other anxiety-related issues. Father attended some of the children's therapy sessions.

¶3 Before Mother and Father's divorce, Father's parents, David Roels, Sr. and Claudia Roels ("Grandparents"), were involved in the children's lives, attended their sports practices and other special events, and provided child care. After Mother and Father separated, however, Grandparents had almost no contact with the children for nearly four years, largely because Mother obstructed Grandparents' attempted interaction by, for example, withholding gifts and cards they sent the children, refusing to accept Grandparents' certified mail, and not responding to their emails.

¶4 In April 2014, Grandparents sought to re-establish their relationship with the children by filing a petition for visitation pursuant to A.R.S. § 25-409(C). In December,

the family court entered a temporary order allowing Grandparents to participate in Father's supervised visits for one hour per month. Pursuant to that order, Grandparents saw the children monthly for eight one-hour sessions between January and August 2015. Supervisory staff who documented those visits described Grandparents as being "well received" by the children and their interaction as warm and affectionate, and noted Grandparents' remarkable preparation for their visits. The children were more engaged in the visits when Grandparents were present, which also seemed to improve the children's interactions with Father.

¶5            The trial on Grandparents' visitation petition occurred over two days in August 2015. On the morning of the trial's first day, Mother and Father stipulated to a parenting plan (the "Parenting Plan") that gave each parent joint legal decision-making authority, with Mother having "final legal decision making" authority if they disagreed. When Mother and Father presented the Parenting Plan to the family court for approval, Father stated, without objection by Mother, that the Parenting Plan did not contain "an agreement on . . . whether or not his parents can be present at his parenting time."

¶6            At trial, Mother, Father, and Grandparents testified and presented testimony from other witnesses. Two therapists whom Mother called — Beth Winters and Karen Morse — testified that visitation with Grandparents exacerbated the children's PTSD and anxiety. Both therapists acknowledged, however, that their opinions were partly based on "selected" visitation reports Mother provided, and they had difficulty explaining why visitation would harm the children. Mother also testified that she believed visitation would be harmful to her children's mental health and would compromise their relationship with Father. But Mother later conceded that the children struggled with anxiety before Grandparents' visitation began.

¶7            Father and Grandparents presented testimony from staff who supervised Grandparents' visitation with the children. Those witnesses described the visits as positive and warm. Father testified about having been diagnosed with severe depression and explained his treatment for that condition. Father also expressed his belief that visitation would benefit the children and that "it's important [for them] to have their own relationship" with Grandparents. Grandparents testified about their efforts to resume their relationship with the children, characterized the court's preliminary visitation order as "a miracle," and explained that their primary focus was "just to keep spending time with the children" because they "love them very much." As for any impact visitation would have on the children's relationship with Father, Grandparents explained that they would be willing to "work that out with him" because "his time with [the] children is most important."

¶8         The family court granted Grandparents' visitation petition.  In its ruling, the court made extensive findings of fact, explained its reasoning in detail, and specified the nature and amount of Grandparents' visitation.  After stating that it gave "deference to Mother's position" and "accept[ed] and . . . applie[d] the [rebuttable] presumption that Mother has and shall continue to make decisions that are in the children's best interests," the court found that "it is in the children's best interests that grandparents have visitation with the children."  The court also found that Mother was "motivated by a desire to exclude the grandparents in part because of her relationship with them" and that Mother's witnesses based their opinions on limited information and did not clearly explain how they arrived at certain conclusions.  Finally, the court found that Grandparents had a warm, bonding relationship with the children and were motivated to seek visitation "by a desire to influence the children in a positive way [and to] love, nurture and care for the children."

¶9         In a split decision, the court of appeals affirmed, reasoning that Father's opinion on visitation, not only Mother's, was entitled to "special weight" under *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality), and A.R.S. § 25-409(E) because he "was not found to be an unfit parent." *In re Marriage of Friedman & Roels*, 242 Ariz. 463, 466–67 ¶ 12, 468 ¶ 18 (App. 2017). The court concluded that the family court "applied the proper standards in awarding visitation to Grandparents." *Id.* at 468 ¶ 19.  Addressing Mother's and the dissent's assertion that *Goodman v. Forsen*, 239 Ariz. 110 (App. 2016), retroactively applied and contravened the family court's ruling, the court of appeals found that case "significantly distinguishable" and declined to "extend its holding to the very different situation presented here." *Friedman*, 242 Ariz. at 468–69 ¶¶ 20–21.  Ultimately, the court ruled that the family court did not abuse its discretion in granting "limited visitation" to Grandparents because they "demonstrated that [Mother]'s decision to bar them from visitation was not in the children's best interests." *Id.* at 469 ¶ 22.

¶10        We granted review because this case presents recurring issues of statewide importance — the intersection of parents' constitutional rights regarding their children and Arizona's statutory scheme relating to grandparents' claimed visitation rights.  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## II.

¶11        We review the interpretation of statutes and constitutional issues de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442 ¶ 15 (2018).  "If a statute's language is subject to only one reasonable meaning, we apply that meaning." *Bell v. Indus. Comm'n of Ariz.*, 236 Ariz. 478, 480 ¶ 7 (2015).  And when "statutes relate to the same subject," we construe them "together . . . as though they constitute[] one law" in order to "give effect to all the statutes involved." *Pima Cty. ex rel. Tucson v. Maya Const. Co.*, 158 Ariz. 151, 155

(1998).

¶12        A.R.S. §§ 25-401 through -416 establish the framework Arizona courts use to resolve legal decision-making and parenting time issues relating to children in statutorily defined circumstances. *See* A.R.S. § 25-402(B). Relevant here is § 25-409, which addresses, among other things, third-party visitation rights. That statute allows "a person other than a legal parent" to "petition the superior court for visitation with a child," and generally authorizes the court to "grant visitation rights during the child's minority on a finding that the visitation is in the child's best interests." § 25-409(C). As amended in 2013, the statute also provides that "[i]n deciding whether to grant visitation to a third party, the court shall give special weight to the legal parents' opinion of what serves their child's best interests" and prescribes a non-exhaustive list of "relevant factors" the court shall consider. § 25-409(E). For § 25-409 purposes, "'[l]egal parent' means a biological or adoptive parent whose parental rights have not been terminated." § 25-401(4). Mother and Father both meet that definition.

¶13        Because § 25-409(C) is framed in permissive terms, it generally does not require the court to grant third-party visitation upon a finding that it would be in the child's best interests; subsection (C) merely vests the court with discretionary authority to do so. But that is not the case with certain grandparents. Subsection (F), which Mother does not address, provides that "[i]f logistically possible and appropriate, the court *shall* order visitation by a grandparent or great-grandparent if the child is residing or spending time with the parent through whom the grandparent or great-grandparent claims a right of access to the child." § 25-409(F) (emphasis added).

¶14        Although § 25-409 does not define "special weight," the legislature's use of that phrase is significant because of identical wording in *Troxel*. 530 U.S. at 69–70. In that case, the mother, a presumptively "fit custodial parent" of two children whose father had died, sought to limit (but not preclude) the paternal grandparents' visitation with her children. *Id.* at 60–61, 69. Addressing a "breathtakingly broad" nonparental-visitation statute and a trial court visitation order that "gave no special weight at all" to the mother's determination of her children's best interests, *id.* at 67, 69, a United States Supreme Court plurality held that the statute as applied "violated [the mother's] due process right to make decisions concerning the care, custody, and control of her daughters." *Id.* at 75. The Court coined the phrase "special weight" to describe the deference courts must afford a parent's visitation opinion, which prevents state "interference with [parents'] fundamental right to make decisions concerning the rearing" of their children. *Id.* at 68. This deference, the Court reasoned, is consistent with "the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69. *Troxel*, however, did not articulate "the precise scope of the parental due process right in the visitation context." *Id.* at 73.

¶15      Although the meaning of "special weight" under *Troxel* is a matter of first impression before this Court, several post-*Troxel* court of appeals cases have addressed that issue. Before the legislature added the "special weight" provision to § 25-409(E), the court of appeals held that the statute "satisfies the due process concerns identified in *Troxel*" by "requir[ing] Arizona courts to give weight to the parent's visitation decisions." *Jackson v. Tangreen*, 199 Ariz. 306, 310 ¶¶ 12, 15 (App. 2000); *see also Graville v. Dodge*, 195 Ariz. 119, 125–26 ¶¶ 26–27 (App. 1999) (holding pre-*Troxel* that former § 25-409, permitting grandparent visitation only after finding that it is in child's best interests, was constitutional); *cf. Downs v. Scheffler*, 206 Ariz. 496, 502 ¶ 25 (App. 2003) (recognizing that "in custody disputes between a fit legal parent and a third person, a parent's wishes concerning custody are entitled, at a minimum, to special weight as a measure of protection for the parent's constitutional right to rear the child").

¶16      In *McGovern v. McGovern*, our court of appeals distilled from *Troxel* two "constitutionally based principles" that must guide a family court's visitation analysis. 201 Ariz. 172, 177 ¶ 17 (App. 2001). First, "the court should recognize and apply a [rebuttable] presumption that a fit parent acts in his or her child's best interest in . . . [making] decisions concerning grandparent visitation." *Id.* Second, courts must afford "'some special weight' to a fit parent's determination of whether visitation is in the child's best interest" and "'significant weight' to a parent's voluntary agreement to some visitation, albeit not as much visitation as the grandparent desires." *Id.* at 177–78 ¶ 18 (quoting *Troxel*, 530 U.S. at 70–72). *McGovern* stated that those constitutional principles "affect but do not necessarily control a trial court's determinations of 'best interests of the child' and 'reasonable [grandparent] visitation rights' under [former § 25-409(A)]." *Id.* at 178 ¶ 19. As for the "amount of weight a trial court should place on these factors," the *McGovern* court concluded that *Troxel* "left that issue for development on a case-by-case basis." *Id.* ¶ 18 (quoting *Harrington v. Daum*, 18 P.3d 456, 460 (Or. App. 2001)).

¶17      Fifteen years later, after the legislature amended § 25-409(E), the court of appeals in *Goodman* revisited what "special weight" means and requires. 239 Ariz. at 112–14 ¶¶ 9–14. In reversing a family court order granting visitation under § 25-409 "in favor of the former girlfriend of a fit mother," *id.* at 111 ¶ 2, and despite recognizing that neither *Troxel* nor the Arizona Legislature defined "special weight," *id.* at 113 ¶ 11, *Goodman* interpreted that language to require "robust deference to fit parents' opinions concerning their children's best interests," *id.* at 113 ¶ 13; *accord Chapman v. Hopkins*, 243 Ariz. 236, 244 ¶ 28 (App. 2017). Thus, according to *Goodman*, "special weight" under § 25-409(E) "mean[s] that the parents' determination is controlling unless" the nonparent seeking visitation proves "a parental decision clearly and substantially impairs a child's best interests." 239 Ariz. at 113 ¶ 13.

### III.

¶18        Mother contends that the court of appeals erred by failing to afford her the constitutional protection to which only she is entitled under *Goodman*'s "robust deference" standard. Echoing the dissent below, Mother argues the family court lacked authority to award visitation to Grandparents absent a showing that her visitation opinion would cause substantial harm to the children's best interests. *See Friedman*, 242 Ariz. at 471–72 ¶¶ 31–33, 36 (Staring, P.J., dissenting); *Goodman*, 239 Ariz. at 113 ¶ 13.

¶19        We disagree. Neither *Troxel* nor Arizona's statutory visitation scheme supports *Goodman*'s broad pronouncements that any "nonparent who seeks visitation carries a substantial burden to prove that the parent's decision [to bar visitation] is harmful," and that "[t]he nonparent must prove that the child's best interests will be substantially harmed absent judicial intervention." 239 Ariz. at 114 ¶ 14. Indeed, *Troxel* and *McGovern* expressly declined to require a showing of harm to rebut a parent's visitation opinion that is entitled to "special weight." In addition, although Arizona law requires a showing of "significant[] detriment[] to the child" when a nonparent seeks legal decision-making authority or child placement, § 25-409(A)(2), it contains no such requirement in the visitation context, *see* § 25-409(C), (E), (F). We therefore reject *Goodman*'s broader interpretation of "special weight" and disavow that case insofar as it purports to subject a nonparent to a heightened burden of proof beyond that required under *Troxel* and *McGovern*.

¶20        We have no reason to believe that the legislature intended "special weight" for § 25-409 purposes to be any different than in *Troxel* or *McGovern*. Indeed, the legislature presumably added that phrase to § 25-409(E) with *Troxel* and its progeny in mind and quite clearly intended to incorporate *Troxel*'s "special weight" component into the visitation analysis. Nor do we read *Troxel* as imposing a higher constitutional standard for "special weight" than does § 25-409. In short, we interpret Arizona's statutory phrase in line with *Troxel*.

¶21        Mother does not challenge the constitutionality of § 25-409 on its face or as applied. Thus, absent any constitutional impediments, that statute is controlling here. It expressly provides that "[i]n deciding whether to grant visitation to a third party, the court shall give special weight to the legal parents' opinion of what serves their child's best interests." § 25-409(E). That provision does not contain any varying gradations of "special weight," nor is it qualified by any requirement other than "legal parent" status. Furthermore, the legislature's use in § 25-409(E) of "legal parents" in the plural possessive form is significant because it contemplates scenarios in which two legal parents' visitation opinions are entitled to "special weight." Notably, the legislature did not qualify that directive by adding, for example, "to the extent the legal parents agree" (or similar

language).

**A.**

¶22        Attempting to follow § 25-409 and *McGovern*, the family court here gave "deference to Mother's position" and applied "the presumption that Mother has and shall continue to make decisions that are in the children's best interests." (Because no court had found him to be "an unfit parent," however, Father was also entitled to "a presumption that fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 68.) But the parental presumption was not required here. *Troxel* and *McGovern*'s interpretation and application of "special weight" was made in the context of what those cases addressed: a lone parent's visitation opinion pitted against a court's contrary order based on the court's determination of the children's best interests. *Troxel*, 530 U.S. at 72; *McGovern*, 201 Ariz. at 173–74 ¶¶ 2–3. In contrast, in this case both Father and Mother are legal parents, § 25-401(4), and therefore each of their opinions on visitation is entitled to "special weight," § 25-409(E). Thus, assuming "special weight" under the statute implicates *Troxel* and *McGovern*'s presumption, when two legal parents have competing visitation views, as is the case here, the respective presumptions effectively and necessarily cancel each other out. *Cf. McDermott v. Dougherty*, 869 A.2d 751, 770 (Md. 2005) (observing that in custody dispute, "the parents commence as presumptive equals" and "each fit parent's constitutional right neutralizes the other parent's constitutional right, leaving, generally, the best interests of the child as the *sole standard* to apply").

¶23        Arizona's visitation statute provides the solution to the resulting stalemate: "The superior court may grant visitation rights . . . on a finding that the visitation is in the child's best interests." § 25-409(C). Given Mother and Father's conflicting visitation opinions, the family court, after considering "all relevant factors," § 25-409(E), was statutorily permitted to grant visitation rights "on a finding that the visitation is in the [children's] best interests." § 25-409(C). Accordingly, the family court should not have required Grandparents to rebut a presumption in Mother's favor because imposing that burden deprived Father of the "special weight" to which his visitation opinion is entitled under § 25-409(E). Even so, we will affirm the court's judgment if it "reached the right result for the wrong reason." *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985).

¶24        Mother argues on several grounds that the family court erred by giving Father's opinion any weight or not affording her opinion against any grandparent visitation "extra" special weight. We turn next to those arguments, none of which is persuasive.

**B.**

¶25        We first address Mother's reliance on the Parenting Plan to refute the family court's visitation order.  Mother argues that the rights afforded a "legal parent" under § 25-409(E) "are distinct from the rights associated with a grant of legal decision-making" and that only her opinion on visitation is entitled to special weight because the Parenting Plan affords her "final decision-making authority" when she and Father disagree.  Relying on *Goodman* and *Nicaise v. Sundaram*, which held that an award of "final decision-making authority on certain issues must be interpreted as awarding sole legal decision-making on those issues," 1 CA-CV 17-0069 FC, 2018 WL 1101654, at *1 ¶ 1 (Ariz. App. Mar. 1, 2018), Mother contends that because she had "final say" on "all [disputed] issues," her decision on third-party visitation governs absent proof "that the child's best interests will be substantially harmed [without] judicial intervention."  Mother further asserts that, as the parent with sole legal decision-making power "in the event of an impasse," she had exclusive statutory authority to "determine the child's upbringing, including the child's education, care, health care and religious training."  A.R.S. § 25-410(A).

¶26        We are not persuaded.  *Nicaise* is inapposite as it did not address visitation issues.  And the statutes relating to legal decision-making and parenting plans do not override § 25-409, which specifically addresses third-party rights and grandparent visitation.  Furthermore, Mother's argument is based on the mistaken premise that a parenting plan that is silent on visitation matters nonetheless controls the outcome of a visitation dispute.  But whether a parent's opinion is entitled to "special weight" under § 25-409 turns on whether he or she is a "legal parent" as defined in § 25-401(4), not whether that parent has legal decision-making authority under a parenting plan.  *See* § 25-409(E); *cf.* A.R.S. §§ 25-401(3) (defining "[l]egal decision-making"), -403.02 (addressing parenting plans).

¶27        Other provisions of § 25-409 support this interpretation.  For example, subsection (D) of that statute differentiates between a child's "legal parents," "[a] third party who possesses legal decision-making authority over the child or visitation rights," and "[a] person or agency that . . . claims legal decision-making authority or visitation rights concerning the child."  § 25-409(D)(1), (2), (4).  By making those distinctions and separately defining "[l]egal decision-making" and "[l]egal parent," § 25-401(3), (4), the legislature indicated that a legal parent may not necessarily have legal decision-making authority and nonetheless required courts to "give special weight to the legal parents' opinion of what serves their child's best interests," § 25-409(E).  This plainly demonstrates that "special weight" for visitation purposes is independent from a grant of legal decision-making authority under a preexisting parenting plan.  In short, Mother's decision-making authority under the Parenting Plan does not control here.

¶28 Even assuming a parenting plan could control visitation disputes, the record does not support Mother's position. When Mother and Father presented the Parenting Plan to the family court for approval, Father, without objection from Mother, stated that the parties had "not made an agreement on . . . whether or not his parents can be present at his parenting time." This brings the Parenting Plan, insofar as it relates to Grandparents' visitation rights, squarely within the bounds of § 25-403.02(D), which directs the court to determine "any element to be included in a parenting plan" about which "the parents are unable to agree." Thus, because Mother and Father were unable to agree on Grandparents' visitation rights, the Parenting Plan does not control and the family court did not err by basing its determination on § 25-409.

## C.

¶29 Mother next argues that the court of appeals erroneously concluded that Father is entitled to the same "special weight" under § 25-409(E) as Mother. *See Friedman*, 242 Ariz. at 468 ¶ 18. She contends that the family court was constitutionally required under *Troxel* to give more weight to her opinion than Father's because she is "the only 'fit' and legal parent" with custody, and Father is a noncustodial parent who has only supervised visitation time.[1] According to Mother, the court of appeals "ignored the distinction between the fit custodial parent and a noncustodial parent by affording the same 'special weight' to both." Giving equal weight to both parents' opinions here, she argues, "vitiates the protections provided in *Troxel* and the best interests of the children."

¶30 We disagree. Mother's argument rests on the incorrect premise that *Troxel*'s "special weight" is afforded to only a "fit custodial parent." Although *Troxel* referred to the mother in that case as a "fit custodial parent," 530 U.S. at 69, 72, that was a descriptive, not a normative, term. In other words, *Troxel* did not as a constitutional matter confine its "special weight" entitlement to custodial parents. As Mother concedes, "*Troxel* is silent on the special weight to be given a parent who is noncustodial or who may not be found 'fit.'" In addition, "special weight" under § 25-409(E) does not hinge on whether one has custody, but only on "legal parent" status.

¶31 We also reject Mother's suggestion that only parents who are fit *and* have custody of their children are entitled to *Troxel*'s "special weight." To the contrary, it is well-established that a parent's rights "do[] not evaporate simply because they have not been model parents or have lost temporary custody of their child . . . . Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable

---

[1] Mother's characterization of Father as a "noncustodial parent" is obsolete; the legislature abolished the principle of "child custody" in 2012 and replaced it with "parenting time" and "legal decision making." 2012 Ariz. Sess. Laws, ch. 309, § 4 (codified as amended at A.R.S. § 25-401).

destruction of their family life." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *accord In re D.I.S.*, 249 P.3d 775, 780–82 (Colo. 2011). Thus, even though Father's parenting time is subject to significant restrictions, that fact does not strip him of, or even limit, his fundamental right to "direct the upbringing . . . of [his] children." A.R.S. § 1-601(A); *cf. Downs*, 206 Ariz. at 502 ¶ 25 n.5 (noting that "*Troxel* was decided in the context of a grandparent's demand for visitation[,] not custody, and thus presumably involved a less intrusive demand upon a fit parent's constitutional right than would a grandparent's demand for custody").

¶32        We also reject Mother's argument that Father's visitation opinion is not entitled to "special weight" because the family court did not expressly find him to be a "fit" parent and because "Father's strictly supervised contact with the children" establishes that "he is not 'fit.'" Because § 25-409(E) affords "special weight" to "legal parents," whether Father is entitled to "special weight" does not turn on whether he is declared to be a "fit" parent, but on whether his parental rights have been terminated. § 25-401(4). And because they have not, Father is a "legal parent" whose visitation opinion is entitled to "special weight" under § 25-409(E).

¶33        Even if parental fitness were relevant here, we reject Mother's assertion that, although Father has not been adjudicated "unfit," he is presumptively unfit because the family court did not expressly find him to be a fit parent. A parent is either fit or unfit — there is no middle ground — and when "[t]here has been no adjudication of the issue of . . . fitness," a person "is presumed to be a fit [parent]." *Ward v. Ward*, 88 Ariz. 130, 139 (1960); *cf. Santosky*, 455 U.S. at 760 ("[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."). We therefore reaffirm what we have long held: a parent is presumed to be "fit" until he or she has been adjudicated unfit.

## D.

¶34        We hold that when, as here, two legal parents' visitation opinions conflict, neither parent is entitled to a presumption in his or her favor and, although both parents' visitation opinions are entitled to special weight, the family court's factually supported determination of whether visitation is in the child's best interests controls.

¶35        To the extent Mother argues that applying the best-interests standard here will impermissibly diminish her fundamental right to direct the upbringing of her children, we disagree. That assertion would apply equally to Father, whose parental rights concerning his children are no less fundamental than Mother's. *See* A.R.S. § 1-602(D) ("Unless otherwise required by law, the rights of parents of minor children shall not be limited or denied."). And Mother's argument is inconsistent with her concession that the governing statute, including its "best interests" standard, is

constitutional.  § 25-409(C).

**IV.**

¶36     Because the decision to award visitation rests within the family court's discretion upon finding that visitation is in the child's best interests, we will not disturb the court's decision absent an abuse of discretion in making the best-interests finding.  *See Andro v. Andro*, 97 Ariz. 302, 305 (1965) (noting that because trial court is in best position to determine best interests of child, its ruling will not be disturbed absent abuse of discretion).  "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision."  *Little v. Little*, 193 Ariz. 518, 520 ¶ 5 (1999) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)).

¶37     Section § 25-409 provides that in determining whether visitation is in a child's best interests, and in addition to the "special weight" requirement discussed above, the trial court must "consider all relevant factors including:"

> 1. The historical relationship, if any, between the child and the person seeking visitation.
>
> 2. The motivation of the requesting party seeking visitation.
>
> 3. The motivation of the person objecting to visitation.
>
> 4. The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.
>
> 5. If one or both of the child's parents are deceased, the benefit in maintaining an extended family relationship.

§ 25-409(E).

¶38     Although the family court expressly "consider[ed]" and made findings on "all relevant factors," including those outlined in § 25-409(E), Mother contends the court abused its discretion in granting Grandparents visitation because there is "significant evidence" that visitation caused the children emotional harm.  Mother further argues that the record does not support the court's finding that Grandparents "had [a] significant relationship [that] was very positive with the children until the time of [Mother and Father's] separation."  According to Mother, the record does not support the court's best-interests finding because there is "significant evidence of harm to the children emotionally" and "no evidence that the children received anything but a fleeting benefit" from visiting with Grandparents.

¶39	Mother's arguments seriously mischaracterize the record. The family court implicitly, but understandably, questioned Mother's evidence that visitation with Grandparents negatively impacted the children's mental wellbeing. One of the therapists Mother called acknowledged that her testimony was based on "selected" visitation reports that Mother provided and that she had never met Grandparents or evaluated the children's reaction to them. The other therapist could not clearly explain the basis for her conclusions and inexplicably said that she would oppose visitation even if the visitation reports were "extremely positive."

¶40	The family court similarly had reason to question Mother's own testimony. Although Mother viewed Grandparents' visitation as harmful because M. "stopped being able to go to school" and R. "started having panic attacks" after visitation began, she later conceded that M. "had a lot of difficulty attending school . . . when the grandparents were not involved," and that R. had trouble with anxiety before visitation began. Mother's anti-visitation opinion was also contradicted by her acknowledging in closing argument that her opposition to visitation was based upon "a false knowledge" of Grandparents and that "these are not the grandparents [to whom] you would deny visits."

¶41	Viewed in the light most favorable to supporting the family court's ruling, the record suggests that the children suffered little, if any, harm from visitation with Grandparents. Staff who supervised the visitation sessions described the children as "enjoying themselves and engaged" and observed "a lot of laughing and joking around, kidding, [and] having fun" during visits. Some evidence showed that the children were (at least initially) uncomfortable and anxious about visitation with Grandparents, but the record also reflects that the children ultimately deemed these fears unfounded. Most telling on this point is M.'s statement to R. after the first visit with Grandparents that he was "[p]retty nervous about nothing." Equally notable is R.'s response: "You would be fine if they came again. Are you with me? I like them coming."

¶42	The record also contradicts Mother's suggestion that the children received only fleeting benefit from visitation with Grandparents. To the contrary, the record establishes that Grandparents fostered a loving, structured environment in which the children were better able to interact with Father — a relationship Mother concedes is important to the children's wellbeing. If anything, the evidence suggests that Grandparents facilitated the children's relationship with Father, which is undeniably more than a "fleeting" benefit.

¶43	Also meritless is Mother's assertion that the record does not support the family court's finding that the children have a significant and positive historical relationship with Grandparents. Indeed, despite the distance between Mother and

Father's marital residence in Tucson and Grandparents' home in Avondale, Grandparents were present during or shortly after the children's births and attended the children's martial arts and ballet lessons, baseball games, birthdays, and other special occasions. Grandparents' visits were frequent enough that they shared a special saying with the children — "go up and make a hook" — describing the route Grandparents' vehicle took to enter the Tucson-area hotel where Grandparents stayed during their visits. The fact that both M. and R. recalled this saying during their visitation with Grandparents further buttresses the family court's finding that before Mother and Father's separation and divorce, the children had a significant, positive relationship with Grandparents.

¶44 In sum, far from being devoid of credible evidence to support the family court's best-interests finding as Mother asserts, the record plainly supports the court's finding that visitation is in the children's best interests. Accordingly, the family court did not abuse its discretion in awarding Grandparents visitation.

## V.

¶45 For the reasons set forth above, we affirm the family court's visitation order and vacate the court of appeals' opinion. In our discretion, we deny both sides' requests for an award of attorney fees under A.R.S. § 25-324.