33 P.3d 506

**Montie McGOVERN and Ann McGovern, Petitioners/Appellants,**

v.

**Tammy McGOVERN, Respondent/Appellee.**

**No. 2 CA–CV 01–0016.**

Court of Appeals of Arizona, Division 2, Department A.

Oct. 11, 2001.

---

Cheryl K. Copperstone, Tucson, for Petitioners/Appellants.

Roberts & Rowley, Ltd., By Paul S. Rowley, Mesa, for Respondent/Appellee.

*OPINION*

PELANDER, J.

¶ 1 Petitioners/appellants Montie and Ann McGovern filed an action under Arizona's grandparents' visitation statute, A.R.S. § 25–409, to obtain court-ordered visitation with their granddaughter, C. Their daughter, respondent/appellee Tammy McGovern, opposed the petition. After a two-day trial, the trial court granted the grandparents' petition in April 2000. In August, however, the court granted the mother's motion for reconsideration and vacated its earlier order in light of *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), decided after the court's initial ruling. The trial court did not conduct any further proceedings, but rather, left visitation to the sole discretion of the mother. This appeal by the grandparents followed. We affirm in part, vacate in part, and remand the case for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

¶ 2 The trial court's August 2000 ruling succinctly summarizes the undisputed factual background:

> This case involves a five-year old child [C.], her mother Tammy McGovern, and her maternal grandparents, Mont[i]e and Ann McGovern. [C.]'s mother and father were not married at the time of her birth on August 25, 1994. The father's parental rights were terminated, and Tammy McGovern moved into the guest house at her parent[s'] home in Tubac with the then two-week-old child. Mother and child remained there until January, 1999.

> The grandparents provided significant financial support for the mother and child while they resided together. When the mother returned to work in December, 1995, the grandmother provided child care. The grandparents fed, clothed and housed the child. She accompanied them on extended summer vacations and attended church and church school with them. Although the relationship between the mother and her parents was strained, the child was clearly loved and adored by all of them.

> The mother moved out of her parents' home in January, 1999, and relocated to Tucson, where she continued to work and to attend [college]. She lives in a home

which is centrally located and within walking distance of [C.]'s school. Many neighbors and friends form a supportive network for both the mother and child. The child is thriving in school ... [and] has been involved in extracurricular activities .... Her kinder garten teacher, who has more than fifteen years of experience in the field, reported that [C.] was a happy, well-adjusted child who did not appear to be suffering from depression or anxiety.

At the time the Court entered the order [granting visitation] in this case, the child was visiting with her grandparents once a week for six hours, on either Saturday or Sunday, pursuant to a temporary court order entered on May 7, 1999.

¶ 3 It is undisputed that, over the four and one-half years the mother and C. lived with the grandparents, a significant and loving bond developed between the grandparents and C. The grandparents' contact with C. was daily and constant. When the mother and C. relocated to Tucson, the grandparents felt a great personal loss and were also concerned about the effect this disruption of contact would have on their granddaughter. They immediately sought to establish regular visitation with C., and the mother assured them she would allow that. The record, however, reflects that, except for two or three weekend visits in early 1999, no visitation occurred for several months until the stipulated pendente lite visitation order in May, issued as a result of the grandparents' petition for court-ordered visitation. The record also reflects that the mother did not offer any additional visitation to the grandparents, other than some make-up time, from the time the temporary order was issued in May 1999 until the trial in March 2000.

¶ 4 The parties, witnesses for both sides, and a court-appointed psychologist testified at trial. In April 2000, the trial court ruled in pertinent part:

THE COURT FINDS that visitation with the grandparents is clearly in the best interest of the child. There is a long, caring relationship between them. The grandparents' motivation for visitation is primarily because of their love of the child and their wish to remain in her life. The mother's motivation in denying the requested visitation is primarily because of her desire to act as an independent parent without undue influence or involvement from others. THE COURT DOES FIND, however, that the quantity of visitation time requested is excessive, may have an adverse impact on the child's customary activities, and is greater than the minimal intrusion contemplated by *Graville* [*v. Dodge*, 195 Ariz. 119, 985 P.2d 604 (App. 1999)].

IT IS THEREFORE ORDERED that the following visitation shall be awarded to the maternal grandparents, beginning April 15, 2000:

1. One weekend per month, from Friday after school through Sunday, until one hour before bedtime.

2. The first four days and overnights of Christmas vacation with return to the mother, at the latest, by December 23 at 5:00 p.m.

3. The first two days and overnights of Spring break.

4. Two weeks of summer vacation. If there is some overlap with regularly scheduled visitation, there shall be no make-up visitation without the mother's agreement.

¶ 5 The mother later moved for reconsideration and for a declaratory judgment based on *Troxel*. In a thorough, well-reasoned order, the trial court granted the motion for reconsideration and vacated its April order, ruling as follows:

The Court finds that its application of the grandparent visitation statute in this case violated the mother's fundamental right to parent her child without state interference as guaranteed by the Due Process Clause of the Fourteenth Amendment. *See Troxel*, [530 U.S. 57,] 120 S.Ct. 2054 [, 147 L.Ed.2d 49] (2000). There was no proof that the mother was unfit. She should have been presumed to be a fit parent whose decisions regarding her child were in the child's best interest. Once the matter proceeded to trial, the burden of proof should have been on the grandparents to show that the mother's decision was not in the child's best interest. The

mother's decision regarding visitation should have been given special weight. Finally, the fact that the mother had offered limited visitation to the grandparents should have been a factor in this Court's decision. For the reasons set forth,

IT IS THEREFORE ORDERED granting the motion for reconsideration and vacating the order for visitation entered on April 10, 2000. The issue of grandparent visitation is left in the discretion of the mother.

## DISCUSSION

¶ 6 We review for an abuse of discretion a trial court's decision to grant or deny visitation. *Armer v. Armer*, 105 Ariz. 284, 289, 463 P.2d 818, 823 (1970); *Graville v. Dodge*, 195 Ariz. 119, ¶ 37, 985 P.2d 604, ¶ 37 (App.1999) (*Dodge I*). That same standard of review applies to a trial court's ruling on a motion for reconsideration. *Cf. Kirby v. Rosell*, 133 Ariz. 42, 46, 648 P.2d 1048, 1052 (App.1982) (grant or denial of motion for new trial within sound discretion of trial court that will not be upset absent clear abuse of discretion); *Modla v. Parker*, 17 Ariz.App. 54, 56, 495 P.2d 494, 496 (1972) (order setting aside final judgment will not be disturbed absent clear abuse of trial court's discretion). This appeal, however, raises issues of statutory interpretation and constitutional law, which we review de novo. *Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, ¶ 6, 972 P.2d 658, ¶ 6 (App.1998).

¶ 7 The grandparents challenge the trial court's ultimate ruling, contending the court's original order granting visitation pursuant to § 25–409 did not offend any constitutional due process constraints set forth in *Troxel*. The mother counters that *Troxel* compelled reversal of the first order because, in granting court-ordered visitation against her wishes, the trial court had failed to apply certain constitutionally mandated safeguards later established in *Troxel*. The first issue, therefore, is whether the statute, as applied in the trial court's original order, contravened *Troxel* by "violat[ing] the mother's

fundamental [constitutional] right to parent her child without state interference," as the court ultimately ruled. And, if so, does that conclusion mandate the trial court's further ruling that "[t]he issue of grandparent visitation is left in the discretion of the mother"? Our uncertainty about the specific meaning of that latter ruling and the lack of any majority opinion in *Troxel* complicate the resolution of these issues.

¶ 8 Section 25–409 provides in pertinent part:

A. The superior court may grant the grandparents of the child reasonable visitation rights to the child during his minority on a finding that the visitation rights would be in the best interests of the child and any of the following [three conditions] [1] are true:

. . . .

C. In determining the child's best interests the court shall consider all relevant factors, including:

1. The historical relationship, if any, between the child and the person seeking visitation.

2. The motivation of the requesting party in seeking visitation.

3. The motivation of the person denying visitation.

4. The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.

5. If one or both of the child's parents are dead, the benefit in maintaining an extended family relationship.

¶ 9 "[P]arents have a constitutionally protected right under the Fourteenth Amendment to raise their children as they see fit." *Dodge I*, 195 Ariz. 119, ¶ 19, 985 P.2d 604, ¶ 19; *see also Troxel*, 530 U.S. at 65–66, 120 S.Ct. at 2059–60, 147 L.Ed.2d at 56. As the court in *Dodge I* concluded, however, grandparent visitation pursuant to § 25–409 "does not substantially infringe on parents' fundamental rights." 195 Ariz. 119,

---

1. C. admittedly "was born out of wedlock," one of the three enumerated conditions under subsec-

tion (A). A.R.S. § 25–409(A)(3).

¶ 23, 985 P.2d 604, ¶ 23.[2] In rejecting a parent's constitutional challenge to § 25–409, the court further concluded that the statute "is rationally related to furthering the state's legitimate interest in enabling children to become responsible adults by fostering relationships between grandchildren and their grandparents." *Id.* at ¶ 27.

¶ 10 The facial constitutionality of § 25–409 is not at issue here. Rather, we must address the trial court's rulings in light of *Troxel* to determine whether § 25–409 was, or may be, constitutionally applied in this case.

¶ 11 Both *Dodge I* and the trial court's initial ruling in this case predated *Troxel*, in which the United States Supreme Court concluded that Washington's nonparental visitation statute was unconstitutional as applied. 530 U.S. at 73, 120 S.Ct. at 2064, 147 L.Ed.2d at 61. Because the Supreme Court disposed of *Troxel* with multiple opinions, none of which garnered a majority of the justices, it is difficult to extract and apply clear constitutional principles from the case. In the plurality opinion authored by Justice O'Connor, however, four justices characterized the Washington statute as "breathtakingly broad,"[3] *id.* at 67, 120 S.Ct. at 2061, 147 L.Ed.2d at 57; recognized a "presumption that fit parents act in the best interests of their children,"[4] *id.* at 68, 120 S.Ct. at 2061, 147 L.Ed.2d at 58; and concluded that a trial court "must accord at least some special weight to the parents' own determination" with respect to nonparental visitation. *Id.* at 70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59.

¶ 12 The custodial mother in *Troxel*, as in our case, admittedly was a fit parent who had never sought to terminate grandparent visitation entirely.[5] *Id.* at 68, 71, 120 S.Ct. at 2061, 2062–63, 147 L.Ed.2d at 58, 60. According to the plurality decision, the Washington trial court not only had failed to recognize a presumption that favored the mother's determination, but also had applied an opposite presumption by placing on her, "the fit custodial parent, the burden of *disproving* that visitation would be in the best interest of her daughters." *Id.* at 69, 120 S.Ct. at 2062, 147 L.Ed.2d at 59. In addition, the plurality opinion noted that the Washington trial court had "failed to accord the determination of [the mother] ... any material weight," *id.* at 72, 120 S.Ct. at 2063, 147 L.Ed.2d at 60, and had given "no weight to [her] having assented to visitation even before the filing of any visitation petition or subsequent court intervention." *Id.* at 71, 120 S.Ct. at 2063, 147 L.Ed.2d at 60. Based on all of those factors, the plurality concluded that the Washington statute, as applied to the mother and her family, violated her fundamental due process right to make decisions about the care, custody, and

---

**2.** In *Graville v. Dodge*, 197 Ariz. 591, ¶¶ 14, 21–22, 5 P.3d 925, ¶¶ 14, 21–22 (App.2000) (*Dodge II*), Division One held that "the legislature intended to allow the trial court to order supervised visitation under section 25–410(B) in grandparent visitation cases" and rejected the father's constitutional challenge to the trial court's order appointing a psychologist to supervise the grandparents' visitation. The United States Supreme Court, however, vacated that decision and remanded the case for reconsideration in light of *Troxel*. *Dodge v. Graville*, 533 U.S. 945, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001) (mem.).

**3.** Apparently, Justice Souter also agreed that the Washington statute was overbroad. 530 U.S. at 79, 120 S.Ct. at 2067, 147 L.Ed.2d at 65 (Souter, J., concurring in the judgment).

**4.** Justices Stevens and Kennedy also recognized that presumption. 530 U.S. at 87, 120 S.Ct. at 2071, 147 L.Ed.2d at 69 (Stevens, J., dissenting);

*id.* at 97–98, 120 S.Ct. at 2077, 147 L.Ed.2d at 76 (Kennedy, J., dissenting); *see also* Eric B. Martin, Note, *Grandma Got Run Over by the Supreme Court: Suggestions for a Constitutional Nonparental Visitation Statute After Troxel v. Granville*, 76 Wash. L.Rev. 571, 588–89 (2001); Susan Tomaine, Comment, *Troxel v. Granville: Protecting Fundamental Parental Rights While Recognizing Changes in the American Family*, 50 Cath. U.L.Rev. 731, 773–74 (2001). And, Justice Souter expressed concern with the lack of any presumption or weight to be given to the parent's visitation decision under Washington's statutory scheme. 530 U.S. at 78 n. 2, 120 S.Ct. at 2066 n. 2, 147 L.Ed.2d at 64 n. 2 (Souter, J., concurring in the judgment).

**5.** The trial court in our case apparently found that the mother had not completely denied visitation to the grandparents at any time pertinent to its ruling. The record, however, reflects that visitation neither occurred nor was offered for approximately four months between late January 1999 and the May pendente lite order.

control of her children. *Id.* at 75, 120 S.Ct. at 2065, 147 L.Ed.2d at 62.

¶ 13 After *Troxel* and after the trial court's ultimate ruling in this case, Division One once again was called upon to address the constitutionality of § 25–409. *Jackson v. Tangreen,* 199 Ariz. 306, 18 P.3d 100 (App. 2000). The court reaffirmed its holding in *Dodge I* that § 25–409 "is constitutional on its face," *id.* at ¶ 31, and concluded that the statute "satisfies the due process concerns articulated in *Troxel.*" *Id.* at ¶ 12. The court stated, "by applying the statute as written, Arizona courts do not violate the Due Process Clause." *Id.* at ¶ 14. The court also remarked that § 25–409 "applies only in cases in which a parent has denied visitation, not merely limited it." *Id.*

¶ 14 We agree with *Jackson* that *Troxel* does not require us to invalidate § 25–409. *See, e.g., Lopez v. Martinez,* 85 Cal.App.4th 279, 102 Cal.Rptr.2d 71, 77–78 (2000); *Crafton v. Gibson,* 752 N.E.2d 78, 92 (Ind.App. 2001); *Zeman v. Stanford,* 789 So.2d 798, 803 (Miss.2001); *Fitzpatrick v. Youngs,* 186 Misc.2d 344, 717 N.Y.S.2d 503, 506 (Fam.Ct. 2000). But because the constitutionality of the statute as applied is at issue here and because we question some of the broad statements in *Jackson,* we attempt to offer further guidance about *Troxel*'s impact on the interpretation and application of § 25–409.

¶ 15 We first note that the statute has several self-limiting features. For example, the statute is framed in permissive rather than mandatory terms, allowing but not requiring the superior court to grant "reasonable visitation rights" to grandparents. § 25–409(A). In addition, such rights may arise only if the trial court finds that grandparent visitation "would be in the best interests of the child" and that one of the three enumerated conditions in subsection (A) exists. And, in determining the child's best interests, the court is required to consider "all relevant factors," § 25–409(C), including, but not limited to, those set forth in subsection (C). *See Jackson,* 199 Ariz. 306, ¶ 11, 18 P.3d 100, ¶ 11.

¶ 16 *Dodge I* and *Jackson* also recognize other significant principles that should affect a trial court's decision under § 25–409 on whether to order grandparent visitation and, if so, how much. As noted in *Dodge I,* the statute "is structured to enable the [trial] court to make grandparent visitation a minimal burden on the rights of the child's parents." 195 Ariz. 119, ¶ 23, 985 P.2d 604, ¶ 23. In other words, "if the court decides to grant visitation, the order must be as minimally intrusive as possible." *Id.* at ¶ 33. The court in *Dodge I* also noted the legislature's awareness of " 'parents' superior right to the custody and care of their children.' " *Id., quoting West v. West,* 294 Ill.App.3d 356, 228 Ill.Dec. 794, 689 N.E.2d 1215, 1221 (1998). *See also Jackson,* 199 Ariz. 306, ¶ 14, 18 P.3d 100, ¶ 14.

■ ¶ 17 Meshing those established concepts with our reading of *Troxel,* we distill the following constitutionally based principles that a trial court should also follow in determining and quantifying grandparent visitation rights under § 25–409. First, the court should recognize and apply a presumption that a fit parent acts in his or her child's best interest in decisions concerning the child's care, custody, and control, including decisions concerning grandparent visitation. *See Troxel,* 530 U.S. at 68–69, 120 S.Ct. at 2061, 147 L.Ed.2d at 58–59; *Jackson,* 199 Ariz. 306, ¶ 13, 18 P.3d 100, ¶ 13; *Crafton,* 752 N.E.2d at 96, 98. That presumption, however, is rebuttable. *See Troxel,* 530 U.S. at 87, 120 S.Ct. at 2071, 147 L.Ed.2d at 69 (Stevens, J., dissenting); *Crafton,* 752 N.E.2d at 96, 98; *cf. In re United States Currency of $315,900.00,* 183 Ariz. 208, 212–13 n. 7, 902 P.2d 351, 355–56 n. 7 (App.1995) (presumption is not evidence that can or should be weighed but, rather, only dictates the order and burden of proof). As the Indiana appellate court stated in *Crafton,* "a grandparent seeking visitation has the burden of rebutting the presumption that a decision made by a fit parent to deny or limit visitation was made in the child's best interest." 752 N.E.2d at 96–97.

■ ¶ 18 Second, a trial court must consider and give "some special weight" to a fit parent's determination of whether visitation is in the child's best interest and give "significant weight" to a parent's voluntary agree-

ment to some visitation, albeit not as much visitation as the grandparent desires. *Troxel,* 530 U.S. at 70–72, 120 S.Ct. at 2062–63, 147 L.Ed.2d at 59–61. *See also Jackson,* 199 Ariz. 306, ¶¶ 13, 14, 18 P.3d 100, ¶¶ 13, 14; *Crafton,* 752 N.E.2d at 96–98. The amount of weight a trial court should place on these factors is not entirely clear because *Troxel's* plurality opinion "does not describe precisely the extent to which [a parent's decision on visitation] will control" and "left that issue for development on a case-by-case basis." *Harrington v. Daum,* 172 Or.App. 188, 18 P.3d 456, 460 (2001); *cf. In re Marriage of Harris,* 92 Cal.App.4th 499, 509, 518, 112 Cal.Rptr.2d 127, 135, 142 (2001) (holding that, although *Troxel* does not so specifically require, California Constitution requires "grandparent seeking visitation rights over the objection of a fit parent to show by clear and convincing evidence that the parent's decision would be detrimental to the child").

¶ 19 Nonetheless, the evidentiary presumption and weight requirements, in our view, should help avoid visitation orders "based solely on the judge's determination of the child's best interests" or on the judge's "mere disagreement" with a fit parent's choice. *Troxel,* 530 U.S. at 67–68, 120 S.Ct. at 2061, 147 L.Ed.2d at 58. *See* Susan Tomaine, Comment, *Troxel v. Granville: Protecting Fundamental Parental Rights While Recognizing Changes in the American Family,* 50 Cath. U.L.Rev. 731, 781–83 (2001). In sum, the foregoing principles affect but do not necessarily control a trial court's determinations of "best interests of the child" and "reasonable [grandparent] visitation rights" under our statute. § 25–409(A).

■ ¶ 20 "If possible, we construe a statute so as to avoid rendering it unconstitutional, resolving any doubts in favor of its constitutionality." *Ramirez,* 193 Ariz. 325, ¶ 20, 972 P.2d 658, ¶ 20. When, as here, the issue is whether a statute was or may be constitutionally applied, we must attempt "to give it a reasonable and constitutional meaning." *Hansson v. State Bd. of Dental Examiners,* 195 Ariz. 66, ¶ 11, 985 P.2d 551, ¶ 11 (App.1998). With those concepts in mind, we conclude that a trial court must not only apply "the statute as written," but also must

afford a fit parent the procedural and evidentiary safeguards discussed above in order to apply § 25–409 in a constitutionally acceptable manner. *Jackson,* 199 Ariz. 306, ¶ 14, 18 P.3d 100, ¶ 14. Superimposing those safeguards on § 25–409 is compatible with the statute and alleviates any constitutional concerns in applying it.

¶ 21 In granting the mother's post-*Troxel* motion for reconsideration and vacating its prior grandparent visitation order, the trial court noted that it essentially had used the "same trial procedures … as were used by the trial judge in *Troxel.*" Based on the various reasons specified in its order, *see* ¶ 5, *supra,* the trial court concluded that it had unconstitutionally applied § 25–409 in a manner that "violated the mother's fundamental right to parent her child without state interference." Because we have no way of knowing how the trial court weighed the evidence and allocated the burdens of proof at trial, we must defer to its hindsight on such matters and have no basis for questioning the court's reasons for vacating its prior order. Therefore, we affirm that aspect of the trial court's August 2000 ruling.

¶ 22 But we need not defer to the trial court's ultimate ruling, which presumably was based on its reading of *Troxel,* that "[t]he issue of grandparent visitation is left in the discretion of the mother." We cannot discern either from the court's order itself or from the record precisely what that ruling means in practical terms. The court's original order granting visitation noted that the mother "object[ed] to the proposed schedule [of the court-appointed psychologist] and urge[d] a more limited visitation arrangement." Similarly, the trial court noted in its subsequent order that the mother had "wanted the issue of visitation with the grandparents to be her decision alone" and that the court had not "credit[ed] the mother with offering visitation to the grandparents, though less than they wanted." Neither the trial court's orders nor the trial transcript, however, specifies the amount or frequency of grandparent visitation the mother was agreeable to at the time of trial or five months later, when the trial court reconsidered and vacated its visitation order based on

*Troxel.* Nor, of course, does the record reflect what frequency or amount of grandparent visitation the mother has allowed, if any, in her "discretion" from August 2000 to the present.

¶ 23 Apparently, unlike this case, the parents in *Dodge I* and *Jackson* sought to discontinue or terminate grandparent visitation rights altogether. *Dodge I*, 195 Ariz. 119, ¶ 9, 985 P.2d 604, ¶ 9; *Jackson*, 199 Ariz. 306, ¶ 3, 18 P.3d 100, ¶ 3. But, even assuming the mother here merely sought *to restrict*, not totally preclude, grandparent visitation, we do not necessarily agree with the dictum in *Jackson* that § 25–409 "applies only in cases in which a parent has denied visitation, not merely limited it." 199 Ariz. 306, ¶ 14, 18 P.3d 100, ¶ 14. Neither § 25–409(C)(1) through (C)(4), which the *Jackson* court cited, nor any other Arizona decision clearly imposes any such condition on grandparent visitation. We see no valid distinction between a parent who seeks to refuse grandparent visitation altogether and one whose offer to permit such visitation is so limited or unreasonable that it essentially fails to "foster [ ] relationships between grandchildren and their grandparents." *Dodge I*, 195 Ariz. 119, ¶ 27, 985 P.2d 604, ¶ 27.

¶ 24 In our view, a parent's willingness to allow some visitation is but one factor to consider under § 25–409. As noted above, a trial court should give "significant weight" to that fact. *Troxel*, 530 U.S. at 72, 120 S.Ct. at 2063, 147 L.Ed.2d at 60. *See also Crafton*, 752 N.E.2d at 86. As long as the trial court extends the aforementioned safeguards and makes the necessary findings pursuant to § 25–409, however, the statute permits the court to grant "reasonable [grandparent] visitation rights," which may vary from those agreed to or urged by the parent. § 25–409(A).

■ ¶ 25 Under the circumstances, we deem it appropriate to remand the case for the trial court to conduct a further evidentiary hearing to determine whether to grant grandparent visitation and, if so, its extent or frequency. In reaching that same result, the Indiana court in *Crafton* stated:

> [T]he Record in this case has not been adequately developed in order to allow [the grandparent] a fair opportunity to present evidence to attempt to rebut the presumption that [the mother's] decision was in her children's best interest. At the time of the original hearing on [the grandparent's] Petition for Grandparent Visitation, [she] was unaware that she was required to disprove this presumption, so it would be inequitable to judge whether she has rebutted the presumption based on the evidence presented at the prior hearing.

> Moreover, as it has been over three years since the original hearing, to make a proper determination under the requirements of *Troxel*, the trial court needs to hear evidence regarding the current situation between the parties and the children, [the mother's] current decision with regard to grandparent visitation (assuming her fitness is not at issue), and whether or not [the mother] is willing to voluntarily allow [the grandparent] any access to the children. Evidence on all of these issues is necessary if the trial court is going to apply the appropriate weight to evidence as required by *Troxel*. It would be unfair to the parties to ask the trial court to determine these issues based on a Record that was not made with these issues in mind.

752 N.E.2d at 98.

¶ 26 Because those same considerations apply here, we subscribe to that approach. Other than an unverified petition for contempt that the grandparents filed in June 2000 and that the trial court denied in its August ruling, nothing in the record specifically reflects how much or how little visitation actually was provided between April and August. Nor does the record reflect how or why the trial court ultimately determined to leave grandparent visitation solely in the mother's discretion or what evidence supported that ruling.

¶ 27 Under these circumstances, unlike some other appellate courts, we are unable to conclude as a matter of law that the grandparents did not carry their burden of rebutting the presumption of parental primacy or could not do so if given the opportunity. *See Harris*, 112 Cal.Rptr.2d at 144; *Kyle O. v.*

*Donald R.,* 85 Cal.App.4th 848, 102 Cal. Rptr.2d 476, 487 (2000); *State v. Paillet,* 270 Kan. 646, 16 P.3d 962, 971 (2001). Accordingly, we affirm the trial court's order of August 28, 2000, except for the aspect that left the issue of grandparent visitation solely "in the discretion of the mother." We vacate that portion of the order and remand the case to the trial court for further proceedings consistent with this decision.[6]

¶ 28 In our discretion, we deny the mother's request for an award of attorney's fees on appeal because she cites no basis for the request. *See* Ariz. R. Civ.App. P. 21(c), 17B A.R.S.; *In re Wilcox Revocable Trust,* 192 Ariz. 337, ¶ 21, 965 P.2d 71, ¶ 21 (App. 1998) ("We will award no attorney's fees where no basis for the award is cited to us."). *See also Kromko v. Superior Court,* 168 Ariz. 51, 61, 811 P.2d 12, 22 (1991); *cf.* A.R.S. § 25–324 (permitting court to award attorney's fees on appeal under specified circumstances).

BRAMMER, Jr., P.J. and FLOREZ, J., concurring.

6. We strongly encourage the parties to stipulate to as many facts as possible on remand, including uncontroverted facts presented in the March 2000 trial, to avoid a needless waste of time in presenting repetitive evidence on undisputed matters.