NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JACK D. ROSFELD, *Petitioner/Appellant*,

*v.*

CHRISTINA J. PAINTER, *Respondent/Appellee*.

No. 1 CA-CV 19-0481 FC
FILED 2-27-2020

Appeal from the Superior Court in Maricopa County
No. FC2018-008318
The Honorable Michael C. Blair, Judge

**AFFIRMED**

COUNSEL

Gillespie Shields Goldfarb Taylor, Phoenix
By David L. Goldfarb
*Co-counsel for Petitioner/Appellant*

Gillespie Shields Goldfarb Taylor, Mesa
By Mark A. Shields
*Co-counsel for Petitioner/Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Diane M. Johnsen joined.

---

**H O W E**, Judge:

¶1         Jack Rosfeld appeals the trial court's ruling denying his *in loco parentis* petition seeking legal decision-making authority and primary physical custody and his alternative request for third-party visitation. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         We view the record in the light most favorable to supporting the trial court's order. *In re Marriage of Friedman and Roels*, 244 Ariz. 111, 113 ¶ 2 (2018). Christina Painter ("Mother") and Rosfeld were in a romantic relationship from March 2012 to April 2015. In April 2015, Mother became involved in a romantic relationship with Michael Marquez ("Father"), moved in with him, and later became pregnant. In July 2015, Mother and Father ended their relationship and Mother moved back in with Rosfeld, and they maintained a platonic relationship. In March 2016, Mother gave birth to her son, A.P. Rosfeld was the only father figure for A.P. until November 2018.

¶3         While Mother lived with Rosfeld, he paid for all her expenses. Rosfeld cared for A.P. during the day while Mother was at work and took A.P. to doctors' appointments, took him on vacations, and did other activities with him. A.P. began to refer to Rosfeld as "Dad," and Mother gave Rosfeld gifts on A.P.'s behalf. In March 2017, Mother and A.P. moved into their own apartment. After that move, Rosfeld continued to care for A.P. while Mother was at work. Mother then started dating Ryan Malleo, who has known A.P. since he was five months' old and has developed a strong bond with A.P.

¶4         Mother became addicted to methamphetamine in 2018, and Rosfeld found methamphetamine in Mother's apartment. Rosfeld consequently petitioned for *in loco parentis*, seeking legal decision-making authority and primary physical custody of A.P. He also moved for temporary emergency custody of A.P. After Rosfeld petitioned for *in loco*

*parentis*, Mother started going to TERROS for drug counseling. The trial court denied the temporary custody motion and set the case for trial. The trial court also ordered Mother to undergo random drug testing and continue drug counseling through TERROS. Before trial, Rosfeld filed a pretrial statement that also included a request for third-party visitation.

**¶5**     By November 2018, Mother had cut off Rosfeld's contact with A.P. Mother completed drug counseling through TERROS and tested negative for drugs from November 2018 through March 2019. In the meantime, Father began visiting A.P. once every two weeks and developed a strong bond with A.P., who now calls him "Dad."

**¶6**     At trial, Rosfeld's expert, Dr. Daniel J. Gaughan, testified that Rosfeld had a strong bond with A.P. and that third-party visitation with Rosfeld would be in A.P.'s best interests. Dr. Gaughan also testified that Mother sent text messages to her friend saying she thought about harming herself every day. Dr. Gaughan further testified that, based on Mother's deposition testimony, she was in denial about her drug problem and that he had little confidence that she would remain sober. Dr. Gaughan admitted, however, that Mother did not present a current risk to A.P. given her clean drug tests. He also admitted that he never observed A.P. and never observed the child with any of the adults involved in the case.

**¶7**     Malleo testified that he was present when Mother and Rosfeld got into an argument at her apartment. Malleo said that Rosfeld became angry and started hitting a wall. Mother also testified that Rosfeld had anger issues from post-traumatic stress disorder. Mother further testified that giving third-party visitation to Rosfeld would be detrimental to A.P. because it would confuse him now that Father is involved in his life.

**¶8**     During trial, Rosfeld abandoned his request for *in loco parentis* and instead asked the court to grant him third-party visitation. Following trial, the trial court denied Rosfeld's petition for legal decision-making and primary custody of A.P. and his request for third-party visitation. Rosfeld timely appealed the denial of his request for third-party visitation.[1]

## DISCUSSION

**¶9**     Rosfeld argues that the trial court abused its discretion in denying his request for third-party visitation without making specific findings on the record about all the relevant factors under A.R.S.

---

[1]     Rosfeld does not appeal the trial court's ruling denying his petition for legal decision-making authority and primary custody of A.P.

§ 25–409(E). We review issues of law and the application of statutory provisions de novo. *See Egan v. Fridlund-Horne*, 221 Ariz. 229, 232 ¶ 8 (App. 2009). When deciding whether to grant third-party visitation, the court "shall give special weight to the legal parents' opinion of what serves their child's best interests and consider all relevant factors[.]" A.R.S. § 25–409(E). We review a trial court's decision to deny visitation for an abuse of discretion. *McGovern v. McGovern*, 201 Ariz. 172, 175 ¶ 6 (App. 2001). An abuse of discretion exists when the record is devoid of competent evidence to support the decision. *In re Marriage of Friedman*, 244 Ariz. at 120 ¶ 36.

**¶10** Section 25–409(E) does not require a trial court to make specific findings on the record about a child's best interests in third-party visitation cases. *Compare* A.R.S § 25–403(B) (requiring a trial court to make specific findings on the record in contested cases about legal decision-making and parenting time). Even so, the trial court made specific findings about each factor enumerated under § 25–409(E). Rosfeld argues Mother's drug history poses a threat to the child, but in denying his request for visitation, the court specifically considered Mother's substance abuse. While the trial court did not address every negative fact introduced at trial, the court was not required to do so. *See* A.R.S. § 25–409. Therefore, the trial court did not err when making its findings.

**¶11** Rosfeld also argues that the trial court failed to analyze evidence of Mother's substance abuse, Mother's texts concerning self-harm, and the testimony from Dr. Gaughan that A.P. would suffer a detriment by having his contact with Rosfeld cut off. Rosfeld further argues that without the required findings, this Court cannot presume that the trial court properly analyzed the presumption that "a fit parent acts in his or her child's best interests" or whether Rosfeld rebutted that presumption. *See McGovern*, 201 Ariz. at 177 ¶ 17.

**¶12** As previously stated, the trial court was not required to make specific findings under A.R.S. § 25–409(E). And while the court's analysis does not detail Mother's substance abuse, self-harm texts, or Dr. Gaughan's testimony, the trial court's comprehensive decision does note Mother's substance abuse and Dr. Gaughan's testimony. Even though the court's analysis was not as detailed as Rosfeld may have wanted, the court was not required to list every finding. *See* A.R.S. § 25–409(E).

**¶13** Additionally, competent evidence supports the trial court's ruling denying Rosfeld's request for third-party visitation. Dr. Gaughan admitted that Mother did not present a current risk to A.P. and that he never observed A.P. with Mother, with Father, or with Rosfeld. The trial

court also heard testimony that Rosfeld had anger issues and that third-party visitation would be detrimental to A.P. because visitation would confuse him now that Father is involved in the child's life and bonded with him. Because competent evidence supports the trial court's ruling, the court did not abuse its discretion by denying Rosfeld's request for third-party visitation.

## CONCLUSION

¶14        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA