IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

VONDA DOUROS, *Petitioner/Appellee,*

*v.*

BRITTANY MORSE, *Respondent/Appellant*.

No. 1 CA-CV 23-0805 FC

FILED 10-31-2024

———————————————

Appeal from the Superior Court in Navajo County
No. S0900DO202300129
The Honorable Melinda K. Hardy, Judge

**VACATED AND REMANDED**

———————————————

COUNSEL

White Mountain Law Group, P.L.C., Show Low
By Michael R. Ellsworth
*Counsel for Petitioner/Appellee*

Heap Law Firm P.L.L.C., Prescott
By Justin Heap
*Counsel for Respondent/Appellant*

---

**OPINION**

---

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Presiding Judge Michael S. Catlett and Vice Chief Judge Randall M. Howe joined. Judge Catlett also delivered a separate special concurrence.

---

**P E R K I N S,** Judge:

**¶1**          Brittany Morse ("Mother") challenges the constitutionality of the superior court's third-party visitation award to Vonda Douros ("Grandmother"). Because the visitation award was excessive and therefore violated Mother's fundamental parental right, we vacate the visitation award and remand for the court to adjust it consistent with this decision.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**          Mother and Kenneth Douros ("Father"), an unmarried couple, are Kyle's (a pseudonym) biological parents. Until Kyle was three, Father's mother, Grandmother, helped supervise and care for Kyle "nearly every weekend Friday, Saturday and Sunday and then sometimes during the week if [Mother and Father] went out or wanted to go somewhere." Father died in a car accident in 2017, when Kyle was three years old. Thereafter, Grandmother saw Kyle "[a]lmost two weekends out of the month from Thursday through Sunday." Grandmother also took Kyle on trips and vacations.

**¶3**          Kyle lives with Mother and her two younger sons from another relationship. Mother and Grandmother live in neighboring communities. In 2021, Mother accused Grandmother of assaulting her and starting a physical altercation between her and Grandmother in front of Kyle. Mother sought an order of protection and received an injunction against harassment against Grandmother, which Mother later voluntarily dismissed.

**¶4**          Mother stopped allowing Grandmother to spend time with and care for Kyle in January 2023. In April 2023, Grandmother petitioned the court for third-party visitation.

**¶5**          At the hearing on the petition, Mother testified that she had previously allowed generous visitation because Grandmother "was very demanding." When "[Mother] was young, [she] didn't know better" and

Grandmother "trick[ed]" her into thinking she had to give Kyle to Grandmother for 72 hours a week. "And so anytime [Mother] didn't give [Kyle] to [Grandmother] for the weekend, she would threaten to sue [Mother] for grandparent's rights." Mother said she withheld Grandmother's visits with Kyle after learning Grandmother's boss was a registered sex offender and Grandmother frequently brought Kyle to work, and other places around her boss, without telling Mother.

¶6          Grandmother admitted that she had a 2005 conviction for contributing to the delinquency of a minor and had received counseling because she was a possible pathological liar. Grandmother also discussed reports related to Mother's domestic violence, including an arrest. Mother explained that she was charged and released because of a domestic violence incident, but that she was either not directly involved in any of the domestic violence reports or was the victim in the report.

¶7          Grandmother testified she was concerned that Kyle was exhibiting troublesome behavior, such as "[h]itting, punching, crying," and a change in his personality that could be linked to Father's death or Mother's domestic violence reports. But Mother testified that she has never seen Kyle exhibit this kind of behavior. She added that Kyle is a loving child and likes to play with his two younger brothers. He participates in church activities and plays sports.

¶8          Grandmother requested a visitation schedule that mirrored the time she spent with Kyle before Mother withheld visitation: every other weekend Thursday–Sunday, every other week in the summer, time around the holidays, and time on Father's Day weekend. Mother testified that because she works until 8:00 pm Monday–Wednesday, Grandmother's request covers all of Mother's days off and she would rarely see him. Mother was also concerned that Grandmother's proposed visitation plan would "disrupt [Kyle's] life and tie him down . . . with somebody who's not even right." She argued the plan would restrict Kyle from spending time with his brothers and extended family and restrict his ability to participate in his other activities. Mother agreed that Kyle would benefit from maintaining a relationship with Father's side of the family and that she would help maintain that relationship if the court dismissed the petition.

¶9          The court reviewed statutory factors and concluded that third-party visitation is in Kyle's best interests. The court first considered the general best interests factors in Section 25-403, finding that Grandmother and Kyle's relationship is "good." The court also found that Grandmother "provide[s] care giving to [Kyle and] engaged in voluminous

amount of activities with [Kyle]" and that the relationship between Kyle and both sides of his extended family is "good." The court found that Mother's mental health is good, and that Grandmother's mental health can be improved as she deals with "past trauma and [her] son's passing." The court further found that Mother has been involved in several "domestic violence occurrences and incident reports" and that "both parties were involved in domestic violence with one another."

¶10     The court next reviewed the best interests factors specific to third-party visitation in Section 25-409, finding that Grandmother is a "care giver" to Kyle, participated in numerous activities with him and "had a bonded relationship with the child." The court acknowledged that Mother objected to visitation "out of past order of protection [sic]," "personal issues with [Grandmother]," and because "Mother does not feel respected by [Grandmother]." The court also found the quantity of visitation time requested has a potential adverse effect on "time with Mother's side of the family and the child's siblings," but that "Father's side of the family have not had visitation since Mother withheld visits to [Grandmother]." The court found there is "clear and convincing evidence to allow visitation for [G]randmother."

¶11     The court awarded Grandmother overnight visitation every other Monday–Thursday that can be traded for weekend visits Thursday–Sunday upon agreement; two weeks in June and two weeks in July; Father's Day weekend; and a day before or after Thanksgiving and Christmas. The court also ordered both parties to facilitate reasonable video calls with Kyle during the other's "parenting time," ordered Mother to set up counseling for Kyle, and prevented Grandmother from bringing Kyle to work or allowing him to be around her boss.

¶12     Mother timely appealed the third-party visitation order, and we have jurisdiction. A.R.S. § 12-2101.1(A)(1).

## DISCUSSION

¶13     Mother argues the visitation award is excessive and infringes on her constitutional right to parent her child. We will not disturb the superior court's visitation ruling absent an abuse of discretion. *See McGovern v. McGovern*, 201 Ariz. 172, 175, ¶ 6 (App. 2001). The court abuses its discretion by committing an error of law while reaching a discretionary conclusion. *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008). We review issues of statutory interpretation and constitutional law *de novo*. *McGovern*, 201 Ariz. at 175, ¶ 6.

¶14　　　　"Parents have a fundamental right, protected by the Fourteenth Amendment, to the 'care, custody, and control of their children.'" *Borja v. Borja*, 254 Ariz. 309, 313, ¶ 8 (App. 2022) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "This right limits arbitrary intrusion into fit parents' decisions regarding their children, including the decision to limit or deny third party visitation." *Id.* (citing *McGovern*, 201 Ariz. at 178, ¶ 19).

¶15　　　　Arizona law allows a third party to petition for visitation with a child in several circumstances, including when one of the legal parents is deceased. A.R.S. § 25-409(C)(1). The superior court may grant the petition if such visitation is in the child's best interests, but "the court shall give special weight to the legal parents' opinion of what serves their child's best interests." A.R.S. § 25-409(E); *see also Troxel*, 530 U.S. at 70 ("[W]hether . . . an intergenerational relationship would be beneficial . . . is for the parent to [decide] in the first instance."). Special weight describes "the deference courts must afford a parent's visitation opinion, which prevents state interference with parents' fundamental right to make decisions concerning the rearing of their children." *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 115, ¶ 14 (2018) (cleaned up). Deference is appropriate given the "presumption that fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 68.

¶16　　　　In short, although a court in this context may override a fit, legal parent's opinion of what is in her child's best interests, such a ruling must first demonstrate why the court's conclusion overcomes such deference to the parent's opinion. Any time the court enters a third-party visitation order over the objection of a fit parent, the court subverts the parent's constitutional right in favor of an individual that—no matter the personal connection with the child—has no constitutional right to parent the child.

¶17　　　　In allowing third parties to seek visitation over a fit parent's objection, the legislature directs courts to "consider all relevant factors." A.R.S. § 25-409(E). The statute then sets forth specific factors including: the "historical relationship" between the child and requesting party; the requesting party's motivations; "the motivation of the person objecting to visitation"; the amount of requested time and any "adverse impact that visitation could have on the child's customary activities"; and the "benefit in maintaining an extended family relationship" if one or both of the child's parents are deceased. A.R.S. § 25-409(E).

**¶18**     We have previously stated that in considering "all relevant factors" the court may also consider the general best interests factors in Section 25-403. *McPherson v. McPherson*, 1 CA-CV 22-0298 FC, 2023 WL 2317560, *3, ¶ 13 (Ariz. App. Mar. 2, 2023) (mem. decision). But we are mindful that the Section 25-403 factors are tailored to a custody dispute between two lawful parents with equal, constitutional rights to the care, control, and custody of their children. Such circumstances contrast with a third-party visitation dispute like the one before us.

**¶19**     On appeal, Mother does not challenge the court's determination that visitation was in Kyle's best interests or the facial constitutionality of Section 25-409. Her appeal is only an as-applied challenge arguing the visitation award was excessive. But the court erred in its best interests analysis when it failed to give Mother's opinion the special weight the Constitution demands, which affected the visitation award that Mother now challenges.

**¶20**     In analyzing the Section 25-403 factors, the court found that Kyle had a "good" relationship with both Mother and Grandmother and that no other concerns like mental health or substance abuse precluded either Mother or Grandmother from visitation with Kyle. While considering the Section 25-409 factors, the court considered that Grandmother is requesting visitation because she is "bonded" to Kyle and has been denied visits. It also considered that Mother objects to visitation out of past disagreements and a physical altercation between the parties. But the court did not indicate that it gave special weight to Mother's opposition to allowing Kyle to spend time with Grandmother. It seems the court found that Grandmother and Kyle had a good relationship, and therefore awarding visitation to Grandmother over Mother's objection was in Kyle's best interests. This was error.

**¶21**     When ordering third-party visitation, especially over the objection of a fit parent, the court must demonstrate how the factors it considered affected its determination of the child's best interests. That a child and a third party have a good relationship is not enough to award court-ordered visitation. The court must explain why visitation is in the best interest of the *child*—not the third party. Most critically, the statute's direction to give special weight to the fit, legal parent's opinion requires some analysis why the court's evaluation of the child's best interests trumps that of the fit parent. *See* A.R.S. 25-409(E).

**¶22**     The court here improperly treated Mother's and Grandmother's opinions equally. This treatment is reflected in the

visitation award that raises Grandmother to the level of a co-equal parent of Kyle. The court's visitation award is excessive. And the court's application of Section 25-409, therefore, unconstitutionally infringed on Mother's fundamental parental right.

¶23 Under Section 25-409, "[a]ny visitation awarded must be as minimally intrusive as possible because grandparent visitation orders must adhere to the parents' superior right to the custody and care of their children." *Borja*, 254 Ariz. at 314, ¶ 16 (cleaned up). "Grandparents are not jointly parenting—indeed any order to that effect is legally impermissible." *Id.* at ¶ 25; *see Hustrulid v. Stakebake*, 253 Ariz. 569, 575, ¶ 16 (App. 2022) ("[C]ourts cannot award joint 'custody' to a legal parent and a third party.").

¶24 However we define "minimally intrusive," the visitation award here greatly exceeds that standard. *See Borja*, 254 Ariz. at 314, ¶ 16. The court awarded Grandmother approximately 110 days of visitation per year. This award prevents Mother from parenting him for approximately one-third of the year. Grandmother will have an outsized influence on Kyle's life and upbringing, and the award will disrupt his weekly schedule as he attends school and activities from different households every week.

¶25 While the award here mirrors the amount of visitation Mother allowed Grandmother before and after Father's passing, the court does not appear to have considered Mother's testimony that she allowed such generous visitation because she felt pressured by Grandmother. A parent's decision to allow her child to spend time with a third party is subject to change, and the court should give weight to the parent's decision to withhold visitation. *See* Section 25-409(E). Absent a determination of parental unfitness, Arizona's third-party visitation statute cannot be wielded to give a third party the same rights or visitation schedule as a non-custodial parent. The court thus erred in its visitation award to Grandmother.

¶26 The superior court also ordered Mother to "set up a counseling session for child to be assessed and follow the counselor's recommendation for further counseling sessions, . . . as needed." Grandmother rightly conceded to us at oral argument that § 25-409 does not give the superior court authority to order Mother to take Kyle to counseling.

## CONCLUSION

**¶27** We vacate the visitation award and the counseling requirement and remand for the superior court to reduce the visitation consistent with this decision after accounting for the special weight due Mother's opinion about her child's best interests.

C A T L E T T, J., specially concurring:

**¶28** I join the court's opinion in full. I write to stress the deference courts must apply when analyzing a fit parent's objection to third-party visitation and to further explain why the superior court's analysis here was inconsistent with such deference.

### I.

**¶29** The United States has a long and robust tradition of respecting parental authority. "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). "Properly understood . . . the tradition of parental authority is not inconsistent with our tradition of individual liberty; rather, the former is one of the basic presuppositions of the latter." *Hodgson v. Minnesota*, 497 U.S. 417, 444 n.31 (1990) (quoting *Bellotti v. Baird*, 443 U.S. 622, 638 (1979)). Unsurprisingly, that tradition made its way into the law. It was "the constant practice of the common law to respect the entitlement of those who bring a child into the world to raise that child." *Adoptive Couple v. Baby Girl*, 570 U.S. 637, 668 (2013) (Scalia, J., dissenting); *see also* 1 William Blackstone, Commentaries on the Laws of England 446 (1765) (deeming "the most universal relation in nature . . . [to be] that between parent and child."). Eventually, the freedom to "establish a home and bring up children" became so rooted in the traditions of our nation that it is now counted as a fundamental constitutional right. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

**¶30** The freedom to bring up children includes "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion); *see also In re Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 4 (1990). "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). And the fundamental right

applies even when individuals "have not been model parents" or have made decisions others in society (including judges) may view as ill-advised. *Santosky*, 455 U.S. at 753; *Adoptive Couple*, 570 U.S. at 668 (Scalia, J., dissenting) ("We do not inquire whether leaving a child with his parents is 'in the best interest of the child.' It sometimes is not; he would be better off raised by someone else. But parents have their rights, no less than children do."). The fundamental right ceases only when the state has terminated parental rights. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 119 ¶ 32 (2018).

## II.

¶31 But Arizona law allows a third-party to petition for visitation with someone else's child. *See* A.R.S. § 25-409(C). Given the fundamental nature of parental rights, the judiciary should exercise special caution when resolving such petitions. Otherwise, we risk violating the right to the care, custody, and control of one's children. When we grant third-party visitation, we necessarily second guess the parent's decision about their child's best interests, deprive the parent of custody for some period, and place the child with someone who has no right to make decisions about the child's life.

¶32 Though lacking legal decision-making authority, a third-party with visitation still makes important day-to-day decisions about the child. How late will she stay up? What will she eat? Will she be allowed to watch television or surf the internet? If so, what will she watch and for how long? What community or social activities will she attend (e.g., church, birthday parties, family functions, sporting events)? The list goes on and on. Often such questions have no right or wrong answer—they are judgment calls. A third party's decisions—even if well-intentioned—will inevitably, at times, run counter to a parent's wishes. Courts must keep that reality in mind and therefore always err on the side of parental rights.

## III.

¶33 The North Star in this area of law is the United States Supreme Court's opinion in *Troxel v. Glanville*. There, the Court reviewed a trial court order mandating grandparent visitation. *Troxel*, 530 U.S. at 61. A plurality of the Court concluded the trial court violated the mother's constitutional rights for three reasons.

¶34 One, the court did not apply a "presumption that fit parents act in the best interests of their children." *Id.* at 68. The court was required to do so because "there will normally be no reason for the State to inject

itself into the private realm of the family to further question the ability of [a] parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69. Even when the presumption is overcome, the court must give "special weight" to a fit parent's determination of her child's best interests. *Id.* at 69.

¶35 Two, the trial court applied the opposite presumption. *Id.* The court presumed third-party visitation should be granted unless the child would be "impacted adversely." *Id.* at 69 (internal brackets omitted). Doing so, "contravened the traditional presumption that a fit parent will act in the best interest of his or her child" and "failed to provide any protection for [the] fundamental constitutional right to make decisions concerning the rearing of" one's children. *Id.* at 69-70.

¶36 Three, there was no allegation that the parent "ever sought to cut off visitation entirely." *Id.* at 71. The trial court "gave no weight to [the parent] having assented to visitation even before the filing of any visitation petition." *Id.* Instead, the court "settled on a middle ground, ordering one weekend of visitation per month, one week in the summer, and time on both of the petitioning grandparents' birthdays." *Id.*

## IV.

¶37 Avoiding the three errors in *Troxel* is crucial, but § 25-409 and the caselaw applying it impose additional requirements. When a third party seeks visitation, the central question the superior court must answer is whether "visitation is in the child's best interests." A.R.S. § 25-409 (C). If the court answers in the affirmative, then the court must determine how much visitation is appropriate. At both stages of the analysis—deciding best interests and setting the visitation amount—the court must give the parent's opinion "special weight." A.R.S. § 25-409 (E).

¶38 We start with "a rebuttable presumption that a fit parent acts in his or her child's best interest." *Friedman*, 244 Ariz. at 116 ¶ 16 (quoting *McGovern v. McGovern*, 201 Ariz. 172, 177 ¶ 17 (App. 2001) (internal brackets omitted)). In my view, to rebut that presumption, a third party should be required to show, *by clear and convincing evidence,* that a fit parent's decision to reject third-party visitation is contrary to the child's best interests. *See In re B.S.*, 205 Ariz. 611, 616 ¶ 14 (App. 2003) (explaining that a higher standard of proof is warranted in a proceeding that encroaches on parents' interest in the care, custody, and control of their children); *In re Wood*, ___ Ariz. ___, 551 P.3d 1163, 1171 ¶ 23 (App. 2024) ("[B]ecause the right to vote is a fundamental right, the petitioner must show that the alleged incapacitated person lacks the capacity to vote by clear and convincing evidence.")

(internal citation omitted)).  Properly applying the presumption, "there will normally be no reason for the State to inject itself into" parents' decisions about what is best for their children.  *Troxel*, 530 U.S. at 68-69.  But when the presumption is overcome, the court must continue to give the parent's wishes special weight.  *See Friedman*, 244 Ariz. at 117 ¶ 22, 119 ¶ 32 (concluding father's wishes were entitled to special weight even when the presumption didn't apply); *Troxel*, 530 U.S. at 69.

**¶39**        In determining whether visitation is in a child's best interests, the court should focus primarily on the five factors in § 25-409(E).  To be sure, this court has said that other factors, including those in § 25-403(A), may be relevant.  Maj. Op. ¶ 18.  But the factors in § 25-403(A) govern legal decision-making and parenting time; they were not drafted with third-party visitation in mind.  *Id.*  Some of the § 25-403(A) factors may be relevant in some cases, but many are ill-suited for third-party visitation.  So the court need not apply all of them in every case.  Instead, the court should focus on the factors in § 25-409(E) and fill in with others only when relevant.

**¶40**        The court must apply all relevant factors holistically.  The analysis should turn on the relationship between the third party and the child and any benefit or harm that might result from visitation.  For example, if a parent has shared child-rearing decisions and responsibilities with a third party for an extended period, thereby allowing a parent-like relationship to develop, terminating that relationship may not be in the child's best interests.  On the other hand, if the third party has a tenuous relationship with the child, has exposed the child to individuals or activities over the parent's objection, or has routinely disregarded the parent's wishes about the child's everyday activities, mandating visitation may not be in the child's best interests.  What a court should never do is simply tick through all relevant factors one-by-one, total those factors supporting visitation and those that don't, and declare the winner to be the party with the most factors in its favor.  Again, the court shouldn't mandate visitation unless the relevant factors show clearly and convincingly that the parent's objection isn't in the child's best interests.

**¶41**        When the state infringes on a fundamental constitutional right—as it does when it mandates third-party visitation—it must do so in the least restrictive manner.  *See Hunter Contracting Co., Inc. v. Super. Ct.*, 190 Ariz. 318, 320 (App. 1997); *Troxel*, 530 U.S. at 80 (Thomas, J., concurring) (explaining that strict scrutiny should apply to infringement of a parents' "fundamental constitutional right to rear their children").  We satisfy that requirement in third-party visitation cases by requiring the amount of visitation awarded to "be as minimally intrusive as possible[.]"  *Borja v. Borja*, 254 Ariz. 309, 314 ¶ 16 (App. 2022).  Special weight applies here too—

the court must give "special weight" to a fit parent's opinion about how much visitation is too much. *See* A.R.S. § 25-409(E).

¶42        The "minimally intrusive" standard requires third-party visitation to be occasional and temporary—such visitation shouldn't be on par with parental visitation in custody matters. The superior court, therefore, need not order visitation that is inflexible, overnight, unsupervised, or at the location of the third party's choosing. Rather, depending on the individual circumstances of the case and the relationship between the parties, visitation may be supervised or may occur at the child's residence or a neutral location. *See Sheehan v. Flower*, 217 Ariz. 39, 42 ¶ 15 (App. 2007) ("We concluded the court could order supervised visitation in grandparent visitation cases."). Moreover, third-party visitation should be structured to allow the parent and child some flexibility in scheduling visitation and to avoid interfering with the child's customary activities. *See* A.R.S. § 25-409(E)(4) (requiring the superior court to consider "the potential adverse impact that visitation will have on the child's customary activities"); *Graville v. Dodge*, 195 Ariz. 119, 128 ¶ 39 (App. 1999) (affirming a visitation order "because the order does not specify a day of the week on which the visitation must take place; visitation times are flexible and can be worked around the schedules of the Dodge family members"); *Bowles v. Trznadel*, No. 1 CA-CV 18-0006 FC, 2019 WL 2266623 *4 ¶ 21 (Ariz. App. May 28, 2019) (mem. decision) (Beene, J.) (vacating a visitation award when the superior court "heard no additional evidence regarding the Children's schedule of customary activities"); *Blakely v. Blakely*, 83 S.W. 3d 537, 547 (Mo. 2002) (upholding a visitation order that "permitted only two hours of visitation per week, with one or both Parents present, and specifically directed that the visitation could not be scheduled during religious services").

¶43        Ultimately, however, the "minimally intrusive" standard can't be reduced to a bright-line rule; how much visitation is "minimally intrusive" will vary from case to case. But prior case law can help guide the way. *Compare Duran v. Anderson*, No. 1 CA-CV 23-0113 FC, 2024 WL 676490, *2–*3 ¶¶ 8, 16 (Ariz. App. Feb. 20, 2024) (mem. decision) (affirming one weekend per month, one week in the summer); *Kayser v. Young*, No. 1 CA-CV 21-0424 FC, 2022 WL 1421114, *1, *4 ¶¶ 7, 21 (Ariz. App. May 5, 2022) (mem. decision) (affirming one nine hour visit per month, one week in the summer); *Greer v. Akers*, 364 So.3d 662, 672, ¶ 29 (Miss. Ct. App. 2021) (one weekend per month, ten days in the summer is not excessive); *Aldridge v. Martin*, 667 S.W.3d 612, 615–16 (Mo. Ct. App. 2023) (noon Saturday to noon Sunday every other weekend and 30 minute video call every Wednesday is not excessive); *Stuard v. Stuard*, 199 Cal. Rptr. 3d 821, 827, 836 (Ct. App.

2016) (as modified) (one overnight on a weekday per week and a weekend per month is permissible) *with Borja*, 254 Ariz. at 703–04, ¶¶ 6, 17 (one weekend each month, two weeks in the summer, holidays, five hours on each child and grandparent's birthday, and weekly calls is excessive at least when grandparents could select schedule); *T.W. ex rel. R.W. v. T.H.*, 393 S.W.3d 144, 147–49 (Mo. Ct. App. 2013) (alternating weekends and holidays, plus time every Christmas, is excessive); *In re I.R.H.*, 9 N.E.3d 529, 539 ¶¶ 57–58 (Ohio Ct. App. 2014) (Friday–Sunday every other weekend, three hour visits every Wednesday, alternating holidays, half of summer, roughly 116 days per year, is excessive); *In re C.D.G.D.*, 800 N.W.2d 652, 655, 659 (Minn. Ct. App. 2011) (every Tuesday and Thursday afternoon, every other weekend Friday–Sunday, and holidays for 182 days/52 overnights is excessive); Maj. Op. ¶ 24 (awarding approximately 110 days of visitation is excessive).

¶44　　　Where a parent has voluntarily agreed to some visitation, the court should give that decision "significant weight," even when the amount is less than the third-party desires. *Friedman*, 244 Ariz. at 116 ¶ 16. When the question isn't whether visitation should be required, but in what amount, the court should rarely intervene. *See Troxel*, 530 U.S. at 71 (holding the statute was unconstitutionally applied when there was no allegation the parent "ever sought to cut off visitation entirely").

¶45　　　Finally, in setting the amount of visitation, the court should never just mirror the amount voluntarily allowed in the past. There is a big difference between voluntary visitation and court-ordered visitation. The former is consistent with a parent's right to choose with whom their child spends time and for how long, while the latter infringes on that right and must be "minimally intrusive." *See Borja*, 254 Ariz. at 314 ¶ 16.

## V.

¶46　　　The majority opinion correctly concludes that the amount of visitation the superior court awarded here was too much. It appears the superior court simply awarded the amount Mother voluntarily allowed in the past, which was error. Maj. Op. ¶¶ 24-26.

¶47　　　But the superior court erred in another way—its decision is inconsistent with the requirements for making a best interests finding. For example, the court found "by clear and convincing evidence this court may grant grandparent visitation." That finding doesn't demonstrate that the court applied a presumption that Mother's decision was in Kyle's best interests or that this is the rare case when the court should step in. There also is no indication that, even if Grandmother overcame the presumption,

the court still gave "special weight" to Mother's determination about Kyle's best interests.

¶48     The court analyzed every factor in both § 25-409(E) and § 25-403(A), but it's not evident why every factor in § 25-403(A) is relevant here. It's also not clear how those factors ultimately played into the court's visitation decision.  This is problematic because there were legitimate reasons why Mother decided not to allow Grandmother visitation, including that Grandmother's boss was a registered sex offender and she frequently took Kyle to work, Grandmother was convicted of contributing to the delinquency of a minor, Grandmother received counseling for possibly being a pathological liar, and the amount of visitation Grandmother requested would take Kyle away from his younger siblings and sports and church activities.  In my view, properly applying the presumption in light of those facts should have led the court to deny Grandmother's petition.

¶49     But the majority opinion correctly concludes the court erred in awarding Grandmother too much visitation.  I therefore join the opinion in full.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV